THE STATE OF CONNECTICUT *vs.* ISAAC HILLMAN.

Third Judicial District, New Haven, June Term, 1929.
WHEELER, C. J., MALTBIE, HAINES, HINMAN and BANKS, Js.

Argued June 5th—decided October 4th, 1929.

"SECTION I. KINDS OF ZONES: For the purpose of promoting the health, safety, morals and general welfare of the community; for the purpose of lessening congestion in the streets; for the purpose of securing safety from fire, panic and other dangers; for the purpose of providing adequate light and air; for the purpose of preventing the overcrowding of land and avoiding undue concentration of population; for the purpose of facilitating adequate provision of transportation, water, sewerage, schools, parks and other requirements; for the purpose of conserving the value of building and encouraging the most appropriate use of land throughout the city; for the purpose of providing for the public health, comfort and general welfare in living and working conditions; and for the purpose of regulating and restricting the location of trades and industries and the location of buildings designed for specified uses; for the purpose of regulating and limiting the height and bulk of buildings hereafter erected, and for the purpose of regulating and determining the area of yards, courts, and other open spaces for buildings hereafter erected, the City of Bridgeport is hereby divided into seven classes of zones: 1. "A" Residence zones. 2. "B" Residence zones. 3. "C" Residence zones. 4. Business zones, No. 1. 5. Business zones, No. 2, and 6. Light Industrial Zones, and 7. Heavy Industrial Zones, as shown on the building zone map which accompanies these regulations and is hereby declared to be a part thereof. The zones designated on said map are hereby established;

the zone designations which accompany said building zone map are hereby declared to be a part thereof. No building or premises shall be erected, altered or used for any other than a purpose permitted in the zone in which such building shall be erected except in conformity with the regulations herein prescribed for the zone in which such building is located."

"SECTION II. USE REGULATIONS CONTROLLING RESIDENCE ZONES: In a residence zone, subject to the provisions of Section VII, no building or premises shall be used and no building shall be erected or altered which is arranged, intended or designed to be used except for one or more of the following uses:" [None of the prescribed uses included the business conducted by The City Barrel Company.]

"SECTION IV. USE REGULATIONS CONTROLLING LIGHT INDUSTRIAL ZONES. In a light Industrial zone no building or premises shall be used, and no building shall be erected which is arranged, intended or designed to be used for any of the following trades, industries or uses: [Here followed twenty-four specified uses which do not include the industry or use of The City Barrel Company.] . . . 25. Any other trade or use that is noxious by reason of the emission of odor, dust, gas or smoke. No use permitted in a residence or business zone shall be excluded from a light industrial zone."

"SECTION VII. NON-CONFORMING BUILDINGS AND USES: Any non-conforming use existing at the time of the passage of these regulations may be continued and any existing building designed, arranged, intended, or devoted to a non-conforming use may be reconstructed and structurally altered, and the non-conforming use therein changed, subject to the following regulations:

"a. The cost of structural alterations made in such building shall in no case exceed fifty per cent of its assessed value, nor shall the building be enlarged unless the use therein is changed to a conforming use.

"b. No non-conforming use shall be extended at the expense of a conforming use.

"c. In a residence zone, no building or premises devoted to a use permitted in a business zone shall be changed into a use excluded from a business zone.

"d. In a residence zone or a business zone, no building or premises devoted to a use permitted in a light industrial zone shall be changed into a use excluded from a light industrial zone.

"e. In a residence, business or a light industrial zone, no building or premises devoted to a use excluded from a light industrial zone shall be structurally altered, if its use shall have been changed since

the time of the passage of these regulations to another use also excluded from a light industrial zone.

"f. In a residence, business or a light industrial zone, no building devoted to a use excluded from a light industrial zone shall have its use changed to another use which is also excluded from a light industrial zone, if the building shall have been structurally altered since the time of the passage of these regulations."

"SECTION XV: COMPLETION AND RESTORATION OF EXISTING BUILDINGS: . . . Nothing in these regulations shall prevent the restoration of a building destroyed by fire, explosion, act of God, or act of the public enemy, to the extent of not more than fifty per cent (50%) of its assessed value or prevent the continuance of the use of such building or part thereof or prevent a change of such existing use under the limitations provided in Section VII. But any building destroyed in the manner aforesaid to an extent exceeding fifty per cent (50%) of its assessed value at the time of such destruction may be reconstructed and thereafter used only in such a manner as to conform to all the provisions of these regulations."

"SECTION XVI. BOARD OF APPEALS. The board of appeals may in a specific case after public notice and hearing, and subject to appropriate conditions and safeguards determine and vary the application of the regulations herein established in harmony with their general purposes and intent, as follows: 1. Hear and decide appeals where it is alleged there is error in any order, requirement, or decision made by the building inspector in the enforcement of these regulations. . . . 3. Permit the extension of a non-conforming use or building upon the lot occupied by such use or building at the time of the passage of these regulations. 4. Permit the erection of an additional building upon a lot occupied at the time of the passage of these regulations by a business or industrial establishment, where carrying out the strict letter of the provisions would result in practical difficulties or unnecessary hardships. . . . 6. Adopt from time to time such rules and procedure as may be deemed necessary to carry into effect the provisions of these regulations. 7. Vary any requirement of these regulations in harmony with its general purpose and intent, so that substantial justice may be done. This authority shall be executed in a manner to secure the public health, safety and welfare solely in instances where there are practical difficulties or unnecessary hardships in the way of carrying out the strict letter of these regulations. 8. Permit in a business zone, subject to the prohibition of Section VI, the construction, extension, alteration or conversion of a building intended for the storage or repair of motor vehicles or for a motor vehicle service or gas filling station. . . . 11. Grant in

undeveloped sections of the city temporary and conditional permits for not more than two years for structures and uses in contravention of these regulations."

"SECTION XVIII. CHANGES: The zoning regulations and boundaries may, from time to time be amended, changed or repealed by the Zoning Commission. If a protest shall be filed against such change, signed by the owners of twenty per centum or more of the area of the lots included in such proposed change, or if those immediately adjacent in the rear thereof extending one hundred feet therefrom, or of those directly opposite thereto extending one hundred feet from the street frontage of such opposite lots, such change shall not become effective except by unanimous vote of the Zoning Commission.

"No change in any regulation or boundary shall, however, be made until after a public hearing in relation thereto, held by the Zoning Commission at which parties in interest and citizens shall have an opportunity to be heard. At least fifteen days' notice of the time and place of such hearing shall be published in a newspaper having a substantial circulation in the city."

"SECTION XX. ENFORCEMENT AND PENALTIES: These regulations shall be enforced by the building inspector who shall be authorized to cause any building, structure, place or premises to be inspected and examined and to order in writing the remedying of any condition found to exist therein or thereon in violation of any provision of these regulations. The owner or agent of any building or premises where a violation of any provision of such regulations shall have been committed or shall exist, or the lessee or tenant of an entire building or entire premises where such violation shall have been committed or shall exist, or the owner, agent, lessee or tenant of any part of the building or premises in which such violation shall have been committed or shall exist, or the agent, architect, builder, contractor or any other person who shall commit, take part or assist in any such violation or who shall maintain any building or premises in which any such violation shall exist, shall be fined not less than ten or more than one hundred dollars for each day that such violation shall continue; but, if the offense be wilful, the person convicted thereof shall be fined not less than one hundred nor more than two hundred and fifty dollars for each day that such violation shall continue, or imprisoned not more than ten days for each day such violation shall continue or both; and the local police court shall have jurisdiction of all such offenses, subject to appeal as in other cases."

Paragraph "c" of Section XXII reads as follows: "c. A 'non-conforming building or use' is one that does not conform with the use regulations of the zone in which it is situated."

*John J. Cullinan,* for the appellant (the accused).

*Richard S. Swain,* for the appellee (the State).

*Harry Schwartz,* with whom, on the brief, was *Henry Greenstein,* Assistant City Attorney for the city of Bridgeport, by permission of the court, filed a brief and argued the cause.

WHEELER, C. J. The Zoning Commission of the city of Bridgeport adopted building zone regulations pursuant to authority contained in Chapter 242 of the Public Acts of 1925. These regulations divide the city into districts and prescribe or regulate the use to which the property in each district may be put. Neither the Public Act nor the regulations of the commission are attacked as a whole, nor could such an attack have been successful. Zoning legislation has been upheld with substantial uniformity as a legitimate subject for the exercise of the police power when it has a rational relation to the public health, safety, welfare and prosperity of the community and is not in plain violation of constitutional provision, or is not such an unreasonable exercise of this power as to become arbitrary, destructive or confiscatory. We applied this principle in upholding zoning legislation adopting building lines, without providing compensation, in *Windsor* v. *Whitney,* 95 Conn. 357, 111 Atl. 354. The application of the police power in this case was one of first impression; it has since been sustained in *Gorieb* v. *Fox,* 274 U. S. 603, 47 Sup. Ct. 675. There have been differing views in the courts in the application of this principle to zoning legislation. We have consistently sustained the view that the application of the underlying principle must be made in the light of existing conditions, to the end that the great purposes for which the police power may be invoked may be promoted. *Connecticut Co.* v. *Stamford,* 95 Conn. 26, 30, 110 Atl. 554; *Cotter* v. *Stoeckel,* 97 Conn. 239, 244, 116 Atl. 248; *Young* v. *Lemieux,* 79 Conn. 434, 65 Atl. 436, 600; *New Haven Water Co.* v. *New Haven,* 106 Conn. 562, 576, 139 Atl. 99; *Euclid* v. *Ambler Realty Co.,* 272 U. S. 365, 47 Sup. Ct. 114; *Zahn* v. *Board of Public Works,* 274 U. S. 325, 47 Sup. Ct. 594; *Hadacheck* v. *Sebastian,* 239 U. S. 394, 36

Sup. Ct. 143; *Cusack Co.* v. *Chicago,* 242 U. S. 526, 529, 37 Sup. Ct. 190; *Reinman* v. *Little Rock,* 237 U. S. 171, 176, 35 Sup. Ct. 511; *Wulfsohn* v. *Burden,* 241 N. Y. 288, 150 N. E. 120; *Spector* v. *Building Inspector of Milton,* 250 Mass. 63, 145 N. E. 265; *Providence* v. *Stephens,* 47 R. I. 387, 133 Atl. 614.

Counsel for the accused argued the appeal upon three claims: (1) that the regulations do not justify the Board of Appeals in directing The City Barrel Company to discontinue its business and remove its stock from its premises on Beardsley Street, (2) that if the regulations be construed to afford such justification they are not authorized by Chapter 242 of the Public Acts of 1925, and (3) are in violation of § 11 of Article First of the Constitution of Connecticut and § 1 of Article XIV of the Amendments to the Constitution of the United States.

Section 1 of the Zoning Act authorizes the city, within its limits, to regulate "the location and use of buildings, structures and land for trade, industry, residence or other purposes." Section 2 provides: "Said zoning authority may divide the municipality into districts of such number, shape and area as may be best suited to carry out the purposes of this Act; and, within such districts, it may regulate the erection, construction, reconstruction, alteration or use of buildings or structures and the use of land. All such regulations shall be uniform for each class or kind of buildings or structures throughout each district, but the regulations in one district may differ from those in another district." Section 3 provides: "Such regulations shall be made in accordance with a comprehensive plan and shall be designed to lessen congestion in the streets; to secure safety from fire, panic and other dangers; to promote health and the general welfare; to provide adequate light and air; to prevent the overcrowding

of land; to avoid undue concentration of population and to facilitate the adequate provision for transportation, water, sewerage, schools, parks and other public requirements. Such regulations shall be made with reasonable consideration as to the character of the district and its peculiar suitability for particular uses, and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout such municipality."

Under these provisions the city was authorized to adopt regulations, dividing the city into districts, and restricting or regulating the use of all property within the districts, and designed to effect the purposes specified in § 3. The city's division in § 1 of the regulations of its area into seven zones classified as residence, business and industrial zones was clearly within the authority vested in it. Its prohibition in § 4 of any building or premises in a Light Industrial Zone designed to be used for "any other trade or use that is noxious by reason of the emission of odor, dust, gas or smoke" was for the purpose of protecting the health and promoting the general welfare of the community and it cannot be said, as matter of law, that this regulation does not do this. Upon the facts found it is a necessary inference of fact that the regulation has a rational relation to the health and public welfare of the community.

The fire having destroyed more than fifty per cent of the assessed value of the buildings of the Barrel Company, it was prohibited from restoring the building so destroyed or using it except under the provisions of § 7 which do not apply in this case. After the fire the business of this company under the zoning regulations was a nonconforming use in a Light Industrial Zone, and a nonpermissible use provided the regulation prohibiting the restoration was not such an un-

reasonable exercise of the police power as to be arbitrary, destructive or confiscatory. Thirty-four days after the fire the Zoning Commission changed the location of the premises of the company from a Light Industrial to a Class C Residence Zone. The regulations controlling residence zones prohibited the erection or alteration of a building designed to be used for the purpose for which the company's business was used. Such use was therefore by the terms of this regulation a nonconforming use, and a nonpermissible use, provided the regulation was not so unreasonable as to be arbitrary, destructive or confiscatory. Where a building permit for certain premises to be used for commercial purposes was applied for before the town put these in a district where this use was prohibited for the express purpose of preventing the use of the building for commercial purposes the court held that: "The circumstance that the land . . . could be used more profitably for commercial purposes than for residential purposes is of slight significance and of no consequence in the broad aspects of the case. Every exercise of the police power in respect to the use of land is likely to affect adversely the property interests of somebody." *Spector* v. *Building Inspector of Milton,* 250 Mass. 63, 70, 145 N. E. 265. The court also held that the issuance of permits prior to the passage of the ordinance gave the permittee no right to erect the building, nor did the fact that the building had been barely begun and that contracts had been entered into in relation to the building give such a right. In *Ware* v. *Wichita,* 113 Kan. 153, 214 Pac. 99, a zoning ordinance was held to apply to buildings not substantially in course of construction and that a prior application for a permit did not prevent the ordinance from prohibiting the erection of the building. *People ex rel. Publicity Leasing Co.* v. *Ludwig,* 158 N. Y. Supp. 208, 211, held that

the zoning ordinance was valid "even though its effect was to revoke the permit of the defendants, and notwithstanding the expenditures made by the defendants." See also *New York* v. *Herdje,* 74 N. Y. Supp. 105, 108; *State ex rel. Manhein* v. *Harrison,* 164 La. 564, 114 So. 159. "Incidental damage to property resulting from governmental activities, or laws passed in the promotion of the public welfare, is not considered a taking of the property for which compensation must be made." *State ex rel. Carter* v. *Harper,* 182 Wis. 148, 153, 196 N. W. 451. The opinion of the Justices of the Supreme Judicial Court of Massachusetts, in 234 Mass. 597, at page 608, 127 N. E. 525, supports its opinion by citing: "In *California Reduction Co.* v. *Sanitary Reduction Works,* 199 U. S. 306 [26 Sup. Ct. 100], and *Gardner* v. *Michigan,* 199 U. S. 325 [26 Sup. Ct. 106], compliance with a general requirement for the cremation of garbage was enforced although thereby the owner was deprived of elements of value in his own property." "Governments could hardly go on if to some extent values incident to property could not be diminished without paying for every such change in the general law. As long recognized, some values are enjoyed under an implied limitation and must yield to the police power." *Pennsylvania Coal Co.* v. *Mahon,* 260 U. S. 393, 413, 43 Sup. Ct. 158.

The zoning regulations authorize the course taken by the Board of Appeals in ordering the Barrel Company to remove its stock and discontinue its business. Permission to the company to continue its business after the fire, temporarily, until it could find a new location, gave the company no right to continue its business other than at the will of the board. The denial by the board, about a month after the fire, of the application of the company for a permit to reconstruct the burned buildings upon the ground that more

than fifty per cent of the assessed value of the buildings had been destroyed by fire stood unrevoked at the time the accused was informed against.

The only questions of serious moment upon the appeal are whether the Public Act and the regulations passed pursuant to it violate § 11 of Article First of the Connecticut Constitution and § 1 of Article XIV of the Amendments to the Constitution of the United States in that they purport to deprive this company and this defendant of his property without just compensation. All property is held subject to the right of government to regulate its use in the exercise of the police power, so that it shall not be injurious to the rights of the community, or so that it may promote its health, morals, safety and welfare. The power of regulation by government is not unlimited; it cannot, as we have stated, be imposed unless it bears a rational relation to the subjects which fall fairly within the police power and unless the means used are not within constitutional inhibitions. The means used will fall within these inhibitions whenever they are destructive, confiscatory, or so unreasonable as to be arbitrary. *Euclid* v. *Ambler Realty Co.*, 272 U. S. 365, 47 Sup. Ct. 114.

Regulations may result to some extent, practically in the taking of property, or the restricting its uses, and yet not be deemed confiscatory or unreasonable. Courts will not substitute their judgment for the legislative judgment when these considerations are fairly debatable. They will regard their validity, their necessity and their wisdom from the standpoint of existing conditions and present times. "And in this there is no inconsistency, for while the meaning of constitutional guaranties never varies, the scope of their application must expand or contract to meet the new and different conditions which are constantly coming

within the field of their operation. In a changing world, it is impossible that it should be otherwise." *Euclid* v. *Ambler Realty Co., supra,* 387. Courts will not hold laws, ordinances or regulations adopted under sanction of law to be unconstitutional unless they are clearly unreasonable, destructive or confiscatory. They cannot be unmindful at all times that they "are dealing with one of the most essential powers of government, one that is the least limitable." *Euclid* v. *Ambler Realty Co., supra; Nectow* v. *Cambridge,* 277 U. S. 183, 185, 48 Sup. Ct. 447; *Zahn* v. *Board of Public Works,* 274 U. S. 325, 327, 346, 47 Sup. Ct. 594; *Gorieb* v. *Fox,* 274 U. S. 603, 47 Sup. Ct. 675; *Cusack Co.* v. *Chicago,* 242 U. S. 526, 529, 37 Sup. Ct. 190; *Chicago & Alton R. Co.* v. *Tranbarger,* 238 U. S. 67, 76, 35 Sup. Ct. 678; *Windsor* v. *Whitney,* 95 Conn. 357, 111 Atl. 354; *Spector* v. *Building Inspector of Milton,* 250 Mass. 63, 145 N. E. 265. Even though a business is not a nuisance *per se,* it is within the police power of the State to declare that "in particular circumstances and in particular localities" a business which is not a nuisance *per se* "shall be deemed . . . in fact and in law" a nuisance. *Reinman* v. *Little Rock,* 237 U. S. 171, 176, 35 Sup. Ct. 511.

The police power has its limitations in the extent of the taking or the diminution of the value of property affected. "When it reaches a certain magnitude, in most if not all cases there must be an exercise of eminent domain and compensation to sustain the act. So the question depends upon the particular facts." *Pennsylvania Coal Co.* v. *Mahon,* 260 U. S. 393, 413, 43 Sup. Ct. 158.

The relation of these regulations to essential subjects for the exercise of the police power being unquestionable, the validity of the provisions of the Act and of these regulations depends upon whether they are so

unreasonable as to be arbitrary or confiscatory. The business restricted, as conducted, created a nuisance. Construing the regulations in the light of the established principles to which we have referred, we are unable to hold that when over fifty per cent of its buildings are destroyed it was not a fair exercise of the police power to refuse to permit the company to restore the burned building and continue the nuisance in a Light Industrial Zone. Nor can the right of the city to change the locality, where the company's property was located to a Residence Zone and thus prohibit the continuance of this business, be held to be an unreasonable exercise of the police power under the circumstances present in this case. *Chicago, B. & Q. Ry. Co. v. Drainage Commissioners,* 200 U. S. 561, 592, 26 Sup. Ct. 341; *Providence v. Stephens,* 47 R. I. 387, 133 Atl. 614; *Spector v. Building Inspector of Milton,* 250 Mass. 63, 145 N. E. 265; *Wulfsohn v. Burden,* 241 N. Y. 288, 150 N. E. 120; *Pritz v. Messer,* 112 Ohio St. 628, 149 N. E. 30. There is nothing in the finding showing the extent of the diminution in value of the property or the business; it may be that these were small in extent.

The regulations before us are comprehensive in scope and divide the city of Bridgeport into zones which, so far as appears, are not unreasonable. The purposes of this division as expressed in § 1 of the regulations most clearly relate to subjects proper for the exercise of the police power. In sustaining these regulations as reasonable, we are not obliged to go the length the Supreme Court of the United States went in *Hadacheck v. Sebastian,* 239 U. S. 394, 36 Sup. Ct. 143. We question whether our State Constitution would have permitted us to hold valid such an exercise of the police power. Zoning regulations of this character, reasonably applied, will promote the morals,

health, safety, welfare and prosperity of the community for which they were adopted and aid in its community development. They are the offspring of urgent urban necessity; they find their support in the police power, never to be exercised save for the public welfare.

"Eminent domain takes property because it is useful to the public. The police power regulates the use of property or impairs rights in property, because the free exercise of these rights is detrimental to public interest." *Windsor* v. *Whitney*, 95 Conn. 357, 367, 111 Atl. 354.

There is no error.

In this opinion the other judges concurred.