## MARGARET COOK FITZGERALD *vs.* THE MERARD HOLDING COMPANY, INCORPORATED, ET ALS.

Third Judicial District, New Haven, June Term, 1929.

WHEELER, C. J., MALTBIE, HAINES, HINMAN and ELLS, Js.

Argued June 11th—decided October 8th, 1929.

*Sol Rubin,* with whom was *Robert J. Emmons,* for the appellant (defendant The Merard Holding Company, Incorporated).

*Clement A. Fuller,* with whom, on the brief, was *Edward C. Fisher,* for the appellant (defendant The Lomas & Nettleton Company).

*Raymond E. Hackett,* with whom was *John D. Walker,* for the appellee (plaintiff).

HINMAN, J. The foregoing and other facts set forth in the finding, which is not attacked, are ample to support the conclusions reached by the trial court that at the time of the adoption of the regulations there did not exist on defendant's premises any nonconforming use, or any building designed, arranged, intended or devoted to a nonconforming use, that the defendant thereafter knowingly and wilfully violated these regulations by causing to be erected a building for purposes not permitted or authorized thereby, and by using the premises and permitting or causing the same to be used for business purposes caused the plaintiff substantial and special injuries. Those injuries and damage were clearly such as to entitle the plaintiff to maintain her action and to injunctive relief, if the regulations are valid. *Fitzgerald* v. *Merard Holding*

*Co.*, 106 Conn. 475, 482, 138 Atl. 483. The further conclusion that the defendants, in the uses made of their building and premises, are guilty of creating and maintaining a nuisance, is also justified.

As above noted the building zone regulations here under consideration are substantially similar, both in purpose and in effect, to those adopted for the city of Bridgeport and which were involved in *State v. Hillman, ante,* p. 92, 147 Atl. 294. In that case, consistently with the position with reference to legislation adopting building lines taken by this court in *Windsor* v. *Whitney,* 95 Conn. 357, 111 Atl. 354, and the principles therein enunciated, and in harmony with the holding of the Supreme Court of the United States, and of most of the States which have passed upon the question, we held that neither the enabling statute (Chapter 242 of the Public Acts of 1925) nor regulations adopted pursuant thereto were open, as a whole, to successful attack on constitutional grounds. It is sufficient to refer to the discussion contained in the opinion in that case and the abundant and decisive authorities therein cited. See also Baker, Legal Aspects of Zoning (1927) Chap. V.

The facts found in the present case demonstrate that it is a necessary inference that the exclusion from residential zones of buildings devoted to most business uses "has a rational relation to the health and public welfare of the community" equally as important and justifying regulation, as the prohibition of obnoxious and nuisance-creating trades or uses in a light industrial zone which was specially involved in the Bridgeport case. *Euclid* v. *Ambler Realty Co.,* 272 U. S. 365, 391, 71 L. Ed. 303, 312, 47 Sup. Ct. 114. "The decisions enumerated in the first group cited above agree that the exclusion of buildings devoted to business, trade, etc., from residential districts, bears a

rational relation to the health and safety of the community. Some of the grounds for this conclusion are—promotion of the health and security from injury of children and others by separating dwelling-houses from territory devoted to trade and industry; suppression and prevention of disorder; facilitating the extinguishment of fires, and the enforcement of street traffic regulations and other general welfare ordinances; aiding the health and safety of the community by excluding from residential areas the confusion and danger of fire, contagion and disorder which in greater or less degree attach to the location of stores, shops and factories. Another ground is that the construction and repair of streets may be rendered easier and less expensive by confining the greater part of the heavy traffic to the streets where business is carried on." *Euclid* v. *Ambler Realty Co., supra,* p. 391. "The constantly increasing density of our urban population, the multiplying forms of industry and the growing complexity of our civilization make it necessary for the State, either directly or through some public agency by its sanction, to limit individual activities to a greater extent than formerly. With the growth and development of the State the police power necessarily develops, within reasonable bounds, to meet the changing conditions. . . . The harmless may sometimes be brought within the regulation or prohibition in order to abate or destroy the harmful. The segregation of industries, commercial pursuits and dwellings to particular districts in a city, when exercised reasonably, may bear a rational relation to the health, morals, safety and general welfare of the community. The establishment of such districts or zones may, among other things, prevent congestion of population, secure quiet residence districts, expedite local transportation, and facilitate the suppression of dis-

order, the extinguishment of fires and the enforcement of traffic and sanitary regulations. The danger of fire and the risk of contagion are often lessened by the exclusion of stores and factories from areas devoted to residences, and, in consequence, the safety and health of the community may be promoted. . . . The exclusion of places of business from residential districts is not a declaration that such places are nuisances or that they are to be suppressed as such, but it is a part of the general plan by which the city's territory is allotted to different uses in order to prevent, or at least to reduce, the congestion, disorder and dangers which often inhere in unregulated municipal development." *Aurora* v. *Burns,* 319 Ill. 84, 93, 94, 95, 149 N. E. 784. "In the first place, the exclusion of business establishments from residence districts might enable the municipal government to give better police protection. Patrolmen's beats are larger, and therefore fewer, in residence neighborhoods than in business neighborhoods. A place of business in a residence neighborhood furnishes an excuse for any criminal to go into the neighborhood, where, otherwise, a stranger would be under the ban of suspicion. Besides, open shops invite loiterers and idlers to congregate; and the places of such congregations need police protection. In the second place, the zoning of a city into residence districts and commercial districts is a matter of economy in street paving. Heavy trucks, hauling freight to and from places of business in residence districts, require the city to maintain the same costly pavement in such districts that is required for business districts; whereas, in the residence districts, where business establishments are excluded, a cheaper pavement serves the purpose. . . . Aside from considerations of economic administration, in the matter of police and fire protection, street paving, etc., any busi-

ness establishment is likely to be a genuine nuisance in a neighborhood of residences. Places of business are noisy; they are apt to be disturbing at night; some of them are malodorous; some are unsightly." *State ex rel. Civello* v. *New Orleans,* 154 La. 271, 282, 283, 33 A. L. R. 260, 97 So. 440. The finding affords a significant confirmation of many of the considerations above enumerated. The purposes of this regulation are proper subjects for the exercise of the police power. *State* v. *Hillman, ante,* p. 92, 147 Atl. 294.

The appellants' main contention is that the regulations involve an unconstitutional impairment of rights vested in them—in The Merard Holding Company by reason of its contract to purchase, engagements entered into, and excavations made before the formal adoption of the zoning regulations, and in The Lomas & Nettleton Company under a mortgage taken May 17th, 1926, about three and one half months after such adoption. The rule is well established that the possession of a permit to build, commencement of work (especially when the building is not substantially in course of construction) or the fact that contracts entered into with third persons may be affected, does not constitute a vested right the invasion or deprivation of which by an enactment of general application, and in a valid exercise of the police power, invalidates the latter on constitutional grounds. *Brett* v. *Building Commissioner of Brookline,* 250 Mass. 73, 81, 145 N. E. 269, and cases cited; *Spector* v. *Building Inspector of Milton,* 250 Mass. 63, 145 N. E. 265; *Opinion of the Justices,* 234 Mass. 597, 127 N. E. 525; *Ware* v. *Wichita,* 113 Kan. 153, 214 Pac. 99; *State ex rel. Manhein* v. *Harrison,* 164 La. 564, 114 So. 159; *People ex rel. Publicity Leasing Co.* v. *Ludwig,* 158 N. Y. Supp. 208; *Des Moines* v. *Manhattan Oil Co.,* 193 Iowa, 1096, 1102, 184 N. W. 823, 188 id. 921. These

cases are definitely and legitimately distinguishable from those upon which appellant relies, which involve revocation of an individual permit because of "a change of mind" on the part of a licensing official or board, or similar situation, instead of the adoption or change of a comprehensive by-law or regulation of general application. The position of the defendant The Merard Holding Company is even less tenable than that of the complainants in the cases last above referred to. As we have seen, it contracted for the site and, without permit from any authority, commenced excavation operations after the proposed zoning regulations had been filed for public inspection and public notice given thereof and of the impending hearing upon and contemplated adoption of them, took title to the premises on the very day of the adoption of the regulations and after receiving warning that the proposed building would violate them and that no permit would be issued, and thereafter, without any attempt to have its claimed rights judicially determined, proceeded to the completion and use of its building in definite and conscious violation and apparent defiance of the established restrictions. In holding that the regulations involve no unconstitutional invasion of this defendant's rights we are well within the principle settled by the cases above cited, and fall far short of the rigors of the decision in *Hadacheck* v. *Sebastian,* 239 U. S. 394, 36 Sup. Ct. 143, or even *Reinman* v. *Little Rock,* 237 U. S. 171, 35 Sup. Ct. 511. The claim of The Lomas & Nettleton Company that the regulations impair vested rights growing out of a mortgage taken long after their adoption and with constructive notice of their provisions, is also futile.

Section XIV of the regulations, hereinbefore quoted, exempts from change in plans, construction or desig-

nated use, a building for which a permit had been issued or plans for which had been filed with the building inspector or board of burgesses of the borough of Greenwich or the selectmen of the town, at the time of the passage of the regulations, and the construction of which shall have been prosecuted and completed as therein provided. Prior to such passage, no permit was required for building in that part of the town lying outside of the borough limits nor was there any requirement that plans therefor be filed with the selectmen or any other officer or authority. The appellants assert that, in consequence, the effect of Section XIV is to accord, as to property within the borough, where such permit and filing was provided for, a privilege not available to property in the town outside of the borough limits, and thereby to deny to the defendants the equal protection of the law guaranteed by Article Fourteen of the Amendments of the Constitution of the United States. But since, as above stated, filing of plans or the obtaining of a permit would not confer such a vested right that exemption from denial of or encroachment upon it is essential to the constitutionality of the regulations, the concession contemplated by this section was not necessary to the validity of the essential operative provisions of the regulations, nor is the subject-matter of the section so connected and interdependent with those other provisions that if the former be unconstitutional, all of the regulations must fall with it. *State ex rel. Mathewson* v. *Dow,* 78 Conn. 53, 56, 60 Atl. 1063; *Miller* v. *Colonial Forestry Co.,* 73 Conn. 500, 48 Atl. 98; 1 Cooley's Constitutional Limitations (8th Ed.) p. 359 *et seq.* Another section (XVI) provides that if any part of the regulations shall be adjudged invalid, such adjudication shall apply to that part only, and the remainder shall be

valid and effective. Since if this section, alone, were held to be invalid the provisions upon which the judgment depends would remain unaffected and operative, no useful purpose would be served by a present determination as to the constitutional validity of Section XIV.

It is obvious that most, if not all, of the consequences alleged in the complaint and set forth in the finding as constituting that special damage to the plaintiff—as distinguished from injury common to the residential community in which she lives—which entitled her to seek redress for invasion of her private rights, could not and did not accrue until after the completion of the building and its occupancy for business purposes, which was after June 1st. The trial court's conclusion that the plaintiff was not guilty of laches in the institution of her suit, early in August, is unassailable as a matter of law. Moreover, the plaintiff's property, the court finds, has been rendered unavailable, by the adoption of the zoning regulations, for any purpose other than residential, and its use and value for that purpose has been greatly impaired by defendant's conduct, while it is apparent that the defendant Holding Company deliberately attempted, first to forestall and circumvent the accomplishment of the legitimate purposes of the contemplated regulations by forwarding its operations before even taking title and before the date set for adoption of the regulations and, after such adoption, to override and flout them. These considerations are not only relevant to the question of laches but are decisive, adversely to the defendants, of their contentions relating to comparative consequences and their attempted "entrenchment behind considerable expenditures of money." *Armstrong* v. *Leverone*, 105 Conn.

464, 475, 136 Atl. 71; *Stewart* v. *Finkelstone*, 206 Mass. 28, 38, 92 N. E. 37, 28 L. R. A. (N. S.) 634.

The judgment rendered enjoins the defendants "from using or permitting to be used for business purposes" the premises described therein. Section II of the regulations, which we quote in the preliminary statement, permits, in a residence zone, certain uses therein specified some of which partake of the nature of a business, and the judgment, instead of restraining all business use of the property in question, should have been so framed as to enjoin, only, such business uses as are not permitted under the terms of the regulations. In this, only, there is error; the judgment of the Superior Court is set aside and that court is directed to render its judgment accordingly.

In this opinion the other judges concurred.