PATSY A. SANTORO ET AL. v. WINTHROP E.
ROCKWELL ET AL., SELECTMEN, TOWN OF RIDGEFIELD

COURT OF COMMON PLEAS   FAIRFIELD COUNTY   FILE NO. 47002½

Memorandum filed January 14, 1947.

*Benjamin Chapnick,* of New Haven, for the Plaintiffs.

*John V. Donnelly,* of Bridgeport, for the Defendants.

BORDON, J. The plaintiffs conduct a dry cleaning and pressing business on Abbott Street in Ridgefield, and have done

so since December, 1945. To provide for the increase and expansion of their business, they began to enlarge their building in August, 1946, but discovered that a zoning ordinance adopted on February 28, 1946, prohibited such action without a license from the board of selectmen. An application was filed on September 9, 1946, and denied by the selectmen, after a hearing, on September 21, 1946.

The zoning ordinance in effect at the time was adopted pursuant to legislative authority under §§ 89c and 90c of the General Statutes, Cumulative Supplement of 1935. Under these sections a municipality is "authorized to enact ordinance or by-laws establishing districts or zones within which no commercial or business structure or building, including advertising signs, may be erected, except as provided in section 90c". Section 90c provides for the filing of an application to authorized local officials for a license to diviate from the provisions of § 89c and for the method of notice and hearing. It also provides that "After such hearing, such local officials may take such action as they shall deem advisable in granting such license or in refusing to grant the same." The plaintiffs claim that the ordinance controlling their right to expand is invalid because it was enacted pursuant to statutes which are likwise invalid, and, therefore, seek an injunction to restrain the defendants from interfering with their plans to erect the contemplated structure.

The only question for determination is whether the last three lines of § 90c involve such an attempted delegation of the legislative power of the General Assembly to administrative officials as to violate those provisions of the Connecticut constitution which vest the legislative power in the General Assembly.

It is conceded that the legislature, "in creating a law complete in itself and designed to accomplish a particular purpose, may expressly authorize an administrative agency to fill up the details by prescribing rules and regulations for the operation and enforcement of the law". *State* v. *Stoddard,* 126 Conn. 623, 628; *Ingham* v. *Brooks,* 95 Conn. 317. However, to constitute a valid delegation of legislative power, the statute must contain a rule or standard to guide or restrain the exercise of the power delegated to the administrative officials so that they will not be accorded the uncontrolled power to grant or withhold approval according to their unregulated discretion. *Keating* v. *Patterson,* 132 Conn. 210. Section 90c gives the select-

men the power to grant or refuse an application, "as they shall deem advisable," with no prescription for uniformity of operation or safeguard to control the whims or prejudices of the officials in charge. It fails to provide any standard to guide the action of the selectmen and may be employed as an instrument of fear or favor depending on considerations which may be alien to the obvious purpose of the legislation. Nor can the broad legislative statement of purpose contained in § 89c afford a sufficient guide for the selectmen in the exercise of their discretion or become a substitute for the necessary legislative prescription of a comprehensive plan to assure uniformity of operation. *Keating* v. *Patterson,* supra. Even the right of appeal to this court afforded by § 91c possesses no saving qualities because of the absence of any standard to guide the court in determining whether the officials acted reasonably or arbitrarily. The broad discretion accorded the officials is so indefinable that applicants of the same class and standing, or the court, are not informed of the necessary and qualifying conditions governing the granting or not granting of an application for a variance. *Keating* v. *Patterson,* supra.

Our Supreme Court has many time held that such legislation violates § 1 of the fourteenth amendment of the constitution of the United States and article second and article third, § 1, of the Connecticut constitution.

In the case of *State* v. *Stoddard,* supra, the court said:

"In order to render admissible such delegation of legislative power, however, it is necessary that the statute declare a legislative policy, establish primary standards for carrying it out, or lay down an intelligible principle to which the administrative officer or body must conform, with a proper regard for the protection of the public interests and with such degree of certainty as the nature of the case permits, and enjoin a procedure, under which, by appeal or otherwise, both public interests and private rights shall have due consideration."

This principle was further enunciated and adhered to in the case of *Keating* v. *Patterson,* supra, in which it was held that an ordinance which does not contain any rule or standard to guide or restrain the exercise of the delegated power is unconstitutional and void. *Eastern Oil Refining Co., Inc.* v. *Court of Burgesses,* 130 Conn. 606; *Ingham* v. *Brooks,* supra.

It must be concluded, therefore, that the delegated powers in § 90c fail to meet the test of propriety as defined by our Supreme Court, contravene the applicable provisions of the federal and state Constitutions, and are unconstitutional and void. It follows that the ordinance enacted pursuant to un- constitutional authority is likewise void.

Perhaps the most troublesome feature of this case is raised by the defendants' "Fourth Special Defense." Through this pleading, it is claimed that a zoning ordinance adopted, under chapter 29 of the General Statutes, on October 4, 1946, dur- ing the pendency of this suit, prohibits the extension of a busi- ness use in a residence zone created by the ordinance within which the plaintiffs' property is contained, and that, even if the plaintiffs prevail on their complaint, they are still confronted by the provisions of a valid ordinance which it is the duty of the town officials to enforce. If that is so, and there seems to be authority for this position, the restraint and delay produc- ed by the invalid ordinance will have operated as an instrument to bar the enjoyment of existing rights the assertion of which could not lawfully have been interfered with by anyone at that time. The question is troublesome because of lack of judicial unanimity on the subject. Connecticut cases appear to sub- ordinate individual rights to the police power of government to regulate uses of land through zoning in cases where com- mencement of building antedated the passage of zoning regula- tions. *State* v. *Hillman,* 110 Conn. 92; *Fitzgerald* v. *Merard Holding Co., Inc.,* 110 Conn. 130. And, this being an equitable proceeding, the court is also aware of precedents which hold that equitable remedies are prospective in their operation and that whether or not a plaintiff is entitled to relief is determined, not by the situation existing when the action is begun, but by that which is developed at the trial. *E. M. Loew's Enterprises, Inc.* v. *International Alliance,* 127 Conn. 415; *Duessel* v. *Prock,* 78 Conn. 343; *Woodbridge* v. *Pratt & Whitney,* 69 Conn. 304.

Not unmindful of conflicting judicial expression on these subjects, the court is, nevertheless, of the opinion that, in the instant case, the facts warrant a conclusion favorable to the plaintiffs. The equities of the case are with the plaintiffs and the issues should be limited to the facts and law in effect at the time the controversy originated. In the cases discussing the prospective features of equity, a distinction is drawn between

equitable remedies and equitable rights, and the prospective features seem to apply only to the field of equitable remedies. In the instant case not only equitable rights are involved but legal rights as well which should be safeguarded as of the date first asserted. Otherwise a municipality could by hindsight legislation defeat existing rights and extinguish nonconforming uses even before they blossom into being.

The facts in this case are susceptible of harmonious application to the principle of law established in *Fitzgerald* v. *Merard Holding Co.*, supra, by reversing the positions and equities of the parties. In the *Fitzgerald* case the defendant attempted to forestall and circumvent contemplated zoing regulations by erecting a business structure in a contemplated residential zone before the passage of the zoning ordinance but after the proposed regulations had been filed for public inspection and notice given of an impending hearing theron. In the instant case the present zoning law had not yet originated when the plaintiffs began excavation in August, 1946. Their rights were controlled only by the ordinance adopted by the selectmen on February 28, 1946, the validity of which is now in question, and in the absence of which the structure would have been well on the way to completion before the adoption of the zoning law in October, 1946. If it is equitable to enjoin a property owner's attempt to beat the zoning law, it seems equally equitable to enjoin a municipality's effort to circumvent existing rights by the passage of an ordinance which, in effect, extinguishes those rights retroactively.

The case of *State* v. *Hillman* does not appear to conflict with the conclusion reached in this case on the basis of facts here present. In the *Hillman* case the defendant's business constituted a nonconforming use, and, when more than 50 percent of it was destroyed by fire, could not, under the zoning law, be re-established. The zone was changed to C residence after a building permit had been obtained but before very much work had been done, and it was held that the zone change controlled the permissive use of the property. In this case there was no valid zoning restriction in existence when the plaintiffs began their extension and the delay in construction was due to the defendants' intereference with an existing lawful right through an unenforceable and unlawful medium.

Judicial authority on the subject of vested rights as they relate to zoning restrictions, although divided, leans toward the

protection of the property owner where he has initiated building operations before the contemplated restrictions became publicly known or effective. Smith, Zoning Law & Practice, Page 122; *People ex rel. Ortenberg* v. *Bales*, 250 N. Y. 598; *New York State Investing Co.* v. *Brady*, 214 A. D. 592. Obviously, if the work is begun with the purpose of flouting or circumventing proposed regulations already publicly known, or if building operations in affected areas are only in the intended or contemplative stage when the regulations become effective, the use of the land involved will be subject to the limitations prescribed by zoning regulations. *State* v. *Hillman*, supra; *Fitzgerald* v. *Merard Holding Co.*, supra; *Fox Lane Corporation* v. *Mann*, 243 N. Y. 550. Such, however, was not the case here.

For reasons herein stated the court is of the opinion that the ordinance in question, passed by virtue of § 90c, is unconstitutional and void, and that the plaintiffs are entitled to the relief sought by their complaint. Judgment may enter accordingly. A judgment file should be prepared by counsel and submitted to the court.