THE FAIRLAWNS CEMETERY ASSOCIATION, INC. *v.* ZONING
COMMISSION OF THE TOWN OF BETHEL ET AL.

BROWN, C. J., JENNINGS, BALDWIN, INGLIS and O'SULLIVAN, Js.

Argued November 6, 1951—decided January 8, 1952

*George F. Lowman*, with whom was *Morgan P. Ames*, for the appellant (plaintiff).

*Philo C. Calhoun*, with whom, on the brief, were *William Hanna* and *Burton F. Sherwood*, for the appellees (defendants).

INGLIS, J. The plaintiff plans to establish a cemetery on land which it owns in the town of Bethel. The zoning regulations of the town purport to prohibit cemeteries in the area where the property is located. In this action a judgment is sought declaring that the zoning regulations are invalid or that, if they are valid, the plaintiff has the right to maintain the cemetery as a nonconforming use.

The finding is not subject to correction. The facts which are necessary to the decision are the following: The plaintiff was organized in 1938 as The Mason Cemetery Association, Inc., for the purpose of "maintaining and operating a cemetery for the burial of deceased members of the Masonic order in good stand-

ing and their families and relatives, and for the burial of such other human remains as may subsequently be provided for by the Board of Directors." It acquired title to the thirty-three and six-tenths acres of land in Bethel which are involved in this litigation and prepared them for use as a cemetery. All of the funds used for the project were furnished by Donald Coster, and after his sudden death in the fall of 1938 all work ceased. Sometime thereafter the association was put into receivership. In the complaint in the receivership action, the association itself alleged: "The purposes for which the plaintiff was formed as a corporation have completely failed of their object and such corporation has abandoned its business." On September 19, 1945, the receiver conveyed the land to Loomis J. Grossman and Theodore Sylvan, and the corporation franchise was turned over to new directors. On August 15, 1946, an agreement to sell the property to R. Burchard Hults, James L. Dowsey and Alfred P. Walker was executed. This agreement provided that upon payment of a portion of the purchase price a deed was to be placed in escrow on September 16, 1946, and was to be delivered to the purchasers upon the payment of the balance of the purchase price on January 15, 1947. The deed was in fact delivered to the purchasers on October 14, 1946. It made no reference to a cemetery, nor did it purport to limit the use of the property to cemetery purposes.

At the time the contract of sale was entered into, the property was run down and overgrown by weeds and shrubbery, the roads had breaks in their surface and were out of repair, and the pond was filled with weeds and undergrowth. Between that time and October 16, 1946, Hults, Dowsey and Walker cleared the roads and the pond at their own expense. On October 16, they deeded the property to the association to be used for

cemetery purposes only. On the same day they be-
came the directors of the association, the name of
which was changed to Fairlawns Cemetery Associa-
tion, Inc. A map showing burial plots in a small por-
tion of the property known as Section 1 was adopted
by the association, and a price list was approved and
delivered to brokers to assist them in making sales. No
burial plots have ever been sold, no burials have ever
been made in the property, and the receiving vault has
never been used as such. Shortly after October 16, be-
cause of the pendency of the move to adopt zoning
regulations presently to be detailed, the association
discontinued its plan for the sale of lots, except that
on November 12 it erected on its premises a large sign
reading "Fairlawns Cemetery, Non-sectarian."

In August, 1946, the association applied to the town
of Bethel for permission to erect a crematory on the
property in question. The application met with a
great deal of objection from the townspeople and was
later withdrawn. Prior to September, 1946, the town
had no zoning ordinance. Late in that month a zon-
ing commission was duly appointed by the selectmen,
and on October 16 there was published a notice of
a public hearing on a proposed ordinance to be held
November 6. This notice incorporated a draft of the
proposed ordinance. After the hearing on November
6, the zoning commission adopted an ordinance, effec-
tive as of November 13, radically different in content
from the one proposed. Acting upon advice of coun-
sel that irregularities of procedure might have in-
validated the ordinance so adopted, the commission
properly and lawfully re-enacted the ordinance on
March 25, 1947.

The ordinance as finally adopted purported (Art. 2)
to cover the entire town of Bethel with the exception
of three areas: the village of Bethel, which was already

zoned; a tract 2000 feet wide lying on both sides of the railroad and extending about one and three-fourths miles from the village line on the north to the Redding town line on the south; and a small triangular piece of swamp land north of the village. The entire area zoned is classified as a residence and business zone, and no premises located therein are to be used for any of fourteen specified purposes (Art. 3), among them being "Crematory or cemetery." The ordinance also provides (Art. 5, § 2): "Except as herein provided, any non conforming use existing at the time of the adoption of these regulations may be continued."

The town of Bethel has within its area three existing cemeteries, one Catholic and two nonsectarian. The population of the town is about 4500, and growth in population for the last twenty-five years has been slow, although slightly accelerated in the last five years. The burial facilities of the town are amply sufficient for any reasonably foreseeable growth of the town in the future. The property owned by the plaintiff is surrounded by residences and small farms and is within sight of at least twelve such residences. The use of the property as a cemetery would result in an increase in traffic on the highways in the vicinity and, in consequence, a decrease in safety for the residents. It also would substantially lessen the values of residence property.

The trial court concluded that the zoning ordinance is valid and constitutional; that the property in question was never used as a cemetery; that, if a cemetery was effectively created in 1938, the use of the property for cemetery purposes was abandoned after Coster's death; and that the acts of the individual owners and the plaintiff after August, 1946, did not effect a use of the land as a cemetery which was a nonconforming use at the time of the adoption of the zoning ordinance.

The validity of the zoning regulations in question depends very largely upon whether they meet the requirements of the enabling act, § 837 of the General Statutes. *Bishop* v. *Board of Zoning Appeals,* 133 Conn. 614, 619, 53 A. 2d 659. That section reads in part as follows: "Such regulations shall be made in accordance with a comprehensive plan and shall be designed to lessen congestion in the streets; to secure safety from fire, panic and other dangers; to promote health and the general welfare; to provide adequate light and air; to prevent overcrowding of land; to avoid undue concentration of population and to facilitate the adequate provision for transportation, water, sewerage, schools, parks and other public requirements. Such regulations shall be made with reasonable consideration as to the character of the district and its peculiar suitability for particular uses, and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout such municipality." The gist of this is that zoning regulations enacted pursuant thereto must possess two characteristics. First, they must be expressive of a plan which is comprehensive. Second, they must promote the public welfare, which is another way of saying that they must be within the police power.

The word "comprehensive" as used in the statute means "[i]ncluding much; comprising many things; having a wide scope." Webster's New International Dictionary (2d Ed.). Accordingly, to be valid, a zoning ordinance must be one which is designed to further a plan which relates to a substantial area of the municipality enacting it and to the reasonable needs of the community, both at present and in the foreseeable future. There must be a plan and that plan must be comprehensive as to territory, public needs and time. *State ex rel. Spiros* v. *Payne,* 131 Conn. 647, 652, 41 A.

2d 908; *Bishop* v. *Board of Zoning Appeals*, supra, 618; *Bartram* v. *Zoning Commission*, 136 Conn. 89, 93, 68 A. 2d 308; *Kuehne* v. *Town Council*, 136 Conn. 452, 460, 72 A. 2d 474. The zoning regulations in question are clearly expressive of a plan to maintain the predominantly residential character of the town but still permit the less objectionable forms of business. The plan is not applied to a narrowly restricted area or for a limited time. In terms, the regulations cover nearly the whole town of Bethel and are in effect for an indefinite time. They leave some districts of the town open for uses other than business and residential. They therefore satisfy the requirement of the statute that such regulations be in accordance with a comprehensive plan.

It is, of course, fundamental that no zoning regulations are valid unless they are within the police power. They must bear a reasonable relation to the public welfare and that relation must be within at least one of the particulars specified in the enabling statute. *Strain* v. *Mims*, 123 Conn. 275, 285, 193 A. 754; *Fitzgerald* v. *Merard Holding Co.*, 110 Conn. 130, 138, 147 A. 513; *Nectow* v. *Cambridge*, 277 U. S. 183, 188, 48 S. Ct. 447, 72 L. Ed. 842. It must be borne in mind that the courts will not substitute their judgment for that of the legislative body if the question whether a zoning ordinance is consistent with the public welfare in any of the particulars specified in the statute is fairly debatable. *State* v. *Hillman*, 110 Conn. 92, 105, 147 A. 294; *Euclid* v. *Ambler Realty Co.*, 272 U. S. 365, 388, 47 S. Ct. 114, 71 L. Ed. 303. A zoning ordinance will be held invalid only if it is palpably unjust, unreasonable or arbitrary. *State* v. *Heller*, 123 Conn. 492, 497, 196 A. 337. And courts should be concerned not so much with the motives which prompted the enactment of the ordinance as with the objective effect of the

ordinance upon the property rights of the persons affected thereby. If the ordinance operates reasonably to promote the public welfare within those particulars specified in the statute, it is valid.

The statute contemplates the enactment of zoning regulations which promote the public welfare by protecting health, by securing safety and by stabilizing property values. In this it does not violate the constitution. *Fitzgerald* v. *Merard Holding Co.*, supra. That portion of Bethel which is zoned by the ordinance in question must reasonably be conceived of as a residential and farming area. It is likely to remain such indefinitely. These conditions are uniform throughout the district. There is, therefore, no reasonable objection to placing the entire area in a single zone. To exclude from that zone the various enterprises which are proscribed by the ordinance operates to continue the district as a residential and farming area and thereby stabilize property values. In the words of the statute, the regulations are "made with reasonable consideration as to the character of the district [zoned] and its peculiar suitability for particular uses." For these reasons alone the ordinance would have to be supported.

Furthermore, the specific question in this case is whether the ordinance is valid in so far as it precludes the use of the plaintiff's property for cemetery purposes. It is true that in almost any town some provision for the burial of the dead is necessary. In Bethel there is already adequate provision for that need. The trial court has found that the use of the plaintiff's property as a cemetery would increase the traffic hazard in the neighborhood and substantially decrease the value of neighboring property. Aside from that, it is generally held that the public welfare reasonably demands the regulation and, at times, even the prohibition of ceme-

teries. *Laurel Hill Cemetery* v.. *San Francisco*, 216 U. S. 358, 365, 30 S. Ct. 301, 54 L. Ed. 515; *Foster* v. *Mayor of Beverly*, 315 Mass. 567, 571, 53 N. E. 2d 693; *Woodlawn Cemetery* v. *Everett*, 118 Mass. 354, 362; *Moritz* v. *United Brethrens Church*, 269 N. Y. 125, 133, 199 N. E. 29; *Matter of Holy Sepulchre Cemetery* v. *Board of Appeals*, 271 App. Div. 33, 43, 60 N. Y. S. 2d 750. The trial court was correct in concluding that the zoning regulations in question were within the enabling statute and were constitutional.

In this connection the plaintiff makes one more contention — that the town was estopped to prohibit the use of its land for cemetery purposes. If we assume without deciding that an estoppel against the adoption or enforcement of a zoning ordinance might arise under certain conditions, no such conditions exist in this case. So far as appears from the finding, no town official with any authority so to do had ever expressly approved the location for burial purposes. Substantially all of the improvement of the land made in 1938 had gone to waste. The expenditures made by the present developers could not have been made in reliance on any assurance by town officials that the property could be used as a cemetery, because, when they made those expenditures, they had notice that the adoption of a zoning ordinance prohibiting such use was pending. Under such circumstances no estoppel could arise against the town. *Darien* v. *Webb*, 115 Conn. 581, 588, 162 A. 690; see *Fitzgerald* v. *Merard Holding Co.*, 110 Conn. 130, 141, 147 A. 513; *State* v. *Hillman*, 110 Conn. 92, 103, 147 A. 294.

The remaining claim in the case is that there was an existing nonconforming use of the property which, under the terms of the ordinance, the plaintiff was entitled to continue. The claim cannot be predicated upon the development of the property for cemetery purposes

in 1938. Abandonment is largely a matter of intention and the subordinate facts found amply warrant the trial court's conclusion that the use for a cemetery had been abandoned after Coster's death. See *State ex rel. Eramo* v. *Payne,* 127 Conn. 239, 241, 16 A. 2d 286; *Glotzer* v. *Keyes,* 125 Conn. 227, 233, 5 A. 2d 1; *Knickerbocker Ice Co.* v. *Sprague,* 4 F. Sup. 499, 503. The claim of the plaintiff that land once devoted to cemetery purposes cannot be abandoned is not well founded. It is true that § 7082 of the General Statutes provides: "All estates that have been or shall be granted . . . for the preservation, care and maintenance of any cemetery, cemetery lot or monuments thereon . . . shall forever remain to the uses to which they have been or shall be granted . . . and to no other use whatever." That statute relates, however, to the application of trust funds to the purposes for which they have been created. It does not preclude a change in investment of such funds. It does not mean that any particular piece of land which has once been used for the burial of the dead must continue forever to be used for that purpose. It is well settled that the use of any specific piece of property as a cemetery may be abandoned. *Tracy* v. *Bittle,* 213 Mo. 302, 317, 112 S. W. 45; *Clarke* v. *Keating,* 183 App. Div. 212, 214, 170 N. Y. S. 187; 14 C. J. S. 82, § 22a; 10 Am. Jur. 512, § 36.

Inasmuch as the property involved in this case was not in use as a cemetery at the time Hults, Dowsey and Walker entered into their contract to purchase it in August, 1946, the only issue is whether they and the plaintiff thereafter went so far in their activities that the court could not reasonably have concluded that the property was not being used as a cemetery when the zoning ordinance was enacted. The decisive question is whether it was being so used on the date of the enactment of the ordinance. *Frank J. Durkin Lumber*

*Co.* v. *Fitzsimmons,* 106 N. J. L. 183, 190, 147 A. 555; *Fierst* v. *William Penn Memorial Corporation,* 311 Pa. 263, 265, 166 A. 761. In the present case it makes no difference whether that date was November 13, 1946, or March 25, 1947, since between those dates no material change of circumstances bearing on the matter of use occurred.

To come within the provisions of the zoning regulations relating to nonconforming uses, the use must be actual. It is not enough that it be a contemplated use, even though plans for that have been put on paper. 8 McQuillin, Municipal Corporations (3d Ed.) p. 375, § 25.188; 58 Am. Jur. 1023, § 152; see *Lehmaier* v. *Wadsworth,* 122 Conn. 571, 575, 191 A. 539. It is not enough that the property was bought for the particular purpose. *West Bros. Brick Co.* v. *Alexandria,* 169 Va. 271, 284, 192 S. E. 881; 8 McQuillin, op. cit., p. 376. We said on this subject in *DeFelice* v. *Zoning Board of Appeals,* 130 Conn. 156, 161, 32 A. 2d 635: "In the ordinance quoted permitting the continuance of 'any nonconforming use existing,' as was pointed out by the court in considering a similar enactment in Pennsylvania, 'neither the extent, quantity nor quality of the use is mentioned, but only that it must exist,' and 'neither the act, the ordinance nor the law generally requires the court to speculate as to the number of acts or business transactions necessary to constitute an existing use,' but, 'as understood in the ordinance, "existing use" should mean the utilization of the premises so that they may be known in the neighborhood as being employed for a given purpose.' *Haller Baking Co.'s Appeal,* 295 Pa. 257, 261, 145 Atl. 77."

In the present case, although the land in question had been purchased by the individuals and deeded to the plaintiff with an intention that it be used as a cemetery, and although plans had been laid out on

paper for the use of a portion of it, there had been no sales of burial lots and no interments. The plaintiff was not irrevocably committed by an accepted dedication of the property to cemetery use. The labor expended upon clearing up the property might well have been considered by the court to be of equivocal significance. See *Woodlawn Cemetery* v. *Everett*, 118 Mass. 354, 362. The court was, therefore, justified in concluding that whatever the present owner had done was not sufficient to put the property into actual utilization as a cemetery so that it would naturally be recognized in the neighborhood as such.

There is no error.

In this opinion the other judges concurred.