THE GRAHAM CORPORATION *v.* BOARD OF ZONING APPEALS OF THE TOWN OF GREENWICH ET AL. (3640)

THE GRAHAM CORPORATION *v.* BOARD OF ZONING APPEALS OF THE TOWN OF GREENWICH ET AL. (3641)

THE GRAHAM CORPORATION *v.* BOARD OF ZONING APPEALS OF THE TOWN OF GREENWICH ET AL. (3642)

BROWN, C. J., BALDWIN, INGLIS, O'SULLIVAN and QUINLAN, Js.

1

Argued April 8—decided June 2, 1953

*William L. Beers,* with whom was *Charles W. Pettengill,* for the appellant (plaintiff) in each case.

*Kenneth F. Clark,* for the appellees (defendant Harvey et al.) in each case.

*Halford W. Park, Jr.,* for the appellee (defendant board) in each case.

O'SULLIVAN, J. Of the three appeals before us, we shall discuss No. 3642, since it is determinative of the other two. It came by appeal to the Court of Common Pleas from a decision of the named defendant

invalidating a foundation permit issued to the plaintiff by the building inspector of the town of Greenwich on the ground that an amendment of the zoning regulations had rendered the permit illegal. The original defendants consisted of the board of zoning appeals, to be called the board, and the town of Greenwich. Subsequently, six individuals who owned realty in the immediate vicinity of the land involved in this litigation were permitted to intervene as parties defendant. The court dismissed the plaintiff's appeal, and from the judgment rendered thereon the plaintiff has appealed to this court.

The case was decided by the court on the record of proceedings had before the board. That record discloses the following general situation: The plaintiff is a domestic corporation, although all but two of its outstanding shares of stock are owned by a resident of Brooklyn, New York. In 1950 and 1951, the plaintiff bought three contiguous parcels of land in Greenwich. Greenwich then was, and still is, subject to zoning regulations, and the plaintiff's land is located in a so-called R-MF zone. Among the uses allowed in that classification were "Multi-family dwellings to accommodate not more than 8 families" and "Multi-family dwellings to accommodate more than 8 families when authorized as a special exception by the Board of Appeals." Greenwich Bldg. Zone Regs. § 9. a. (2), (3) (1947, as amended).

On April 30, 1951, the plaintiff filed with the board an application for a special exception to build three multifamily dwellings on a part of its property. The board granted the exception in so far as to authorize the use of the property for a dwelling to house more than eight families, but it ruled that only a single building devoted to that purpose could, under the regulations, be erected upon the premises. There-

after, the plaintiff applied to the building inspector for a foundation permit to begin the construction of what it maintained was a single unit for 195 families, as shown by modified plans attached to the application. The permit was refused on the ground that the structure was in fact three separate buildings—a ruling which the board later upheld. A further application to the inspector for a permit on revised plans was granted. On appeal to the board, the permit was invalidated for the reason that the proposed structure still consisted of three buildings.

On Saturday, October 27, 1951, upon further revision of the plans, the inspector issued another foundation permit. Two days later, the six individuals referred to above as intervenors appealed to the board from the inspector's decision. The hearing thereon was held on November 14, 1951. On this occasion, the board upheld the ruling that the proposed structure was a single building, but it revoked the permit because of an amendment to the zoning regulations approved by the town plan commission on November 7, 1951, and made effective one week later. By virtue of the provisions of this amendment of general application, dwellings which house over forty families are now forbidden in an R-MF zone.

The plaintiff expressly concedes in its brief that, under the accepted law of this state, there is no vested property right in a mere building permit. *Torello* v. *Board of Zoning Appeals,* 127 Conn. 307, 310, 16 A.2d 591; *Osborn* v. *Darien,* 119 Conn. 182, 185, 175 A. 578; *State* v. *Hillman,* 110 Conn. 92, 103, 147 A. 294. "The rule is well established that the possession of a permit to build, commencement of work (especially when the building is not substantially in course of construction) or the fact that contracts entered into with third parties may be affected,

does not constitute a vested right the invasion or deprivation of which by an enactment of general application, and in a valid exercise of the police power, invalidates the latter on constitutional grounds." *Fitzgerald* v. *Merard Holding Co.*, 110 Conn. 130, 141, 147 A. 513.

The plaintiff attempts to escape the operation of the foregoing rule by relying upon claimed equities which, if existent at all, are more apparent than real. To be sure, it had been attempting for over a year to remove the legal barriers which blocked the path of its ultimate purpose. That purpose was to erect upon a portion of its recently acquired land a building of such magnitude as to house 195 families. The plaintiff could not carry out this plan unless a special exception was first obtained. This was no minor exception which was sought. A jump from 8 to 195 families in one structure was obviously a matter of more than fleeting interest to those whose adjacent properties might well be adversely affected by the presence of such a project as that contemplated.

It is apparent from the facts set forth at the beginning of this opinion, as well as from many others that might have been narrated, that the plaintiff was persistent in its efforts to attain its goal; and it is just as evident that equally tireless were those who opposed each step taken and who appealed from every decision by which the plaintiff appeared to have gained an advantage. In other words, the case under consideration does not present a situation where the plaintiff was unaware of any hostility to its program on the part of the nearby residents of the town. Everything, of course, points unmistakably to the contrary. When, then, the foundation permit was issued under date of October 27, the plaintiff doubtless expected, in view of its past experience,

that the opposition would seek a review of the inspector's action. Such, indeed, proved to be the fact when the adjacent landowners, upon learning of the issuance of the permit, took an appeal to the board on October 29, thereby staying all further construction activities on the plaintiff's part. General Statutes, Cum. Sup. 1951, § 159b.

The record does not establish just what work had been done prior to October 27, but anything which the plaintiff accomplished on Saturday and Sunday, October 27 and 28, in excavating on the land with the use of power shovels and in pouring concrete footings did not bring the building to the point where it was "substantially in course of construction," as mentioned in the rule. Nor does the hurried incurring of expenditures on the two days mentioned commend itself to any equitable consideration. The difficulty in which the plaintiff finds itself on this matter of expense was one of its own deliberate choice.

As long as the amendment limiting to forty families the use of an R-MF zone was one of general application to the entire town, the court was legally justified in upholding the board's action in invalidating the permit. The case is but another instance of the principle that the interest of an individual is subordinate to the public good, and, whatever it may be, the financial loss must be borne by the plaintiff in order to make possible the broader advantages secured for the community as a whole by the amendment to the regulations. *Osborn v. Darien*, 119 Conn. 182, 185, 175 A. 578; *State v. Hillman*, 110 Conn. 92, 100, 147 A. 294.

As indicated above, the parties agree that our holding in case No. 3642 is determinative of the other two appeals.

There is no error in any of the cases.
In this opinion the other judges concurred.