LESTER L. BRETT *vs.* BUILDING COMMISSIONER OF BROOKLINE.

OSSIAN D. BRETT *vs.* SAME.

Norfolk. May 20, 1924. — October 16, 1924.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & WAIT, JJ.

*Building Law,* Zoning ordinance. *Constitutional Law,* Police power: municipal zoning; Ex post facto amendment. *Municipal Corporations,* By-laws and ordinances.

*Inspector of Buildings of Lowell* v. *Stoklosa, ante,* 52, and *Spector* v. *Building Inspector of Milton, ante,* 63, followed.

A by-law of the town of Brookline, dividing the town into three districts, permitting the erection in district 1 of buildings for " General Business Purposes," in district 2 of buildings for " Store Purposes," and in district 3 of buildings to be used for " Residence Purposes " by one or more families, was a valid and constitutional exercise of the power given by art. 60 of the Amendments to the Constitution of the Commonwealth and by G. L. c. 40 §§ 25–30.

An amendment to the by-law above described, redistributing the town to the extent of adding a district 4 as a district for " single-family resident purposes " and prohibiting therein the use and construction of any building except for " A detached one-family dwelling, a church, school, club and other kinds of accessory or incidental buildings," did not effect such inequality in districting as denied equal protection of the law to those within the restricted area, was not an unreasonable exercise of power having no rational relation to public safety, public health or public morals, and cannot be pronounced an improper exercise of police power.

Previous to the adoption of the amendment creating district 4, above described, an owner of land in district 3 applied for a permit to build a dwelling house designed for two families, and complied with all the then existing requirements of the statutes and by-laws with respect to his application. A permit was issued to him and he made contracts looking toward the construction of his house, and excavation and engineering work had been begun and a permit to pour in cement for the foundation had been obtained. A month after his original permit was granted, the amendment to the by-law creating district 4 was adopted which was effectual as to his lot. Thereupon the building commissioner, without previous notice or hearing, revoked the building permit previously granted and notified him to that effect. The petitioner thereupon sought a writ of certiorari to quash the action of the building commissioner in revoking his permit. *Held,* that

(1) The petitioner had no special and peculiar immunity arising from the fact that a permit had been issued to him before the amendment to the by-law was adopted;

(2) The revocation of the permit rested exclusively upon the change of the by-law and not upon a change of mind of the licensing officer;

(3) The work which had been done by the petitioner did not result in his acquiring vested rights against the change in the by-law;

(4) The circumstance, that contracts made by the petitioner with third persons before the passage of the amendment to the by-law might be affected, did not impair the amended by-law in its constitutional phases, it having been determined that in general it was a valid exercise of the police power;

(5) The work done by the petitioner had not proceeded far enough to constitute it an " existing structure " within the provision of G. L. c. 40, § 29, exempting " existing structures " from the operation of such a by-law as above described;

(6) The petition for the writ of certiorari must be dismissed.

PETITIONS, filed in the Supreme Judicial Court for the county of Norfolk on April 15, 1924, seeking writs of certiorari and the quashing of action of the respondent in revoking permits previously granted to the petitioners, respectively, for the erection of certain buildings.

In each case, the facts were agreed upon. Material facts are described in the opinion. The cases were reported by *Carroll*, J., for determination by the full court.

The cases were submitted on briefs.

*A. J. Daly & J. A. Daly*, for the petitioners.

*R. A. Stewart & C. O. Pengra*, for the respondent.

RUGG, C.J. These are two petitions for writs of certiorari to quash the proceedings of the defendant as building commissioner of the town of Brookline in revoking building permits issued to the plaintiffs. The salient facts are that the town of Brookline adopted a zoning by-law, which took effect in June, 1922. That by-law may be presumed to have been adopted pursuant to art. 60 of the Amendments to the Constitution of this Commonwealth and G. L. c. 40, §§ 25–30. By that by-law the territory of the town was divided into three districts. Without noting ancillary terms or exceptions and modifications, it thereby was in general provided that in district 1 buildings might be erected and used for " General Business Purposes," in district 2, for " Store Purposes " and in district 3, for " Residence Pur-

poses." In district 3 it was expressly provided that dwellings for one or more families might be used and erected. On March 18, 1924, at a town meeting an amendment was adopted to the zoning by-law, redistricting the town to the extent of adding a new district, 4, designated as "Single-Family Resident Purposes," prohibiting the use and construction of any building therein except for "A detached one-family dwelling," a church, school, club and other kinds of accessory or incidental buildings not here material. This amendment took effect on April 4, 1924. No question is raised on this record as to the regularity and sufficiency of the steps taken with respect to the adoption of this amendment.

The report does not set out in detail the characteristics of the town of Brookline, as was rightly and fully done in *Spector* v. *Building Inspector of Milton, ante,* 63. Geographically, Brookline is adjacent to and almost surrounded by Boston. Every presumption is to be indulged in favor of the by-law. So far as these characteristics may be thought to be connected with adaptability of the town of Brookline to residence uses, they may be assumed to exist.

The petitioner Lester L. Brett was the owner, prior to the adoption of the amendment to the zoning by-law establishing district 4, of three lots of land within district 3 of the first zoning by-law, which were within district 4 as established by the amendment. Prior also to the adoption of that amendment he applied for permits to build on each of two of these lots and the petitioner Ossian D. Brett applied for a permit to build on the other of these lots, a dwelling house designed for two families. There was compliance with all the then existing requirements of statutes and by-laws with respect to such applications. Permits to erect such two-family dwelling houses were granted in accordance with the applications on March 4, 1924. Each petitioner made certain contracts toward the construction of these houses and work thereon had actually begun. On one lot only some slight excavation had been done prior to April 4, 1924. On each of the other two lots, the batter boards had been erected and the engineering work of designating the lines of

the house and the height of the foundation had been done: on one of these some work of excavation had been done and on the other foundation trenches had been dug to the full depth and permits to pour in cement for the foundations had been obtained. By letters dated April 8, 1924, and received by the petitioners on April 9, 1924, the respondent without notice or hearing revoked the permits previously issued to the petitioners on the ground that the erection of the buildings thereby authorized would be in violation of the amendment of the zoning by-law effective on April 4, 1924.

By operation of the original zoning by-law important limitations were imposed on the use of much real estate within the boundaries of Brookline. That was a valid exercise of the police power. It has been held in the cases of *Inspector of Buildings of Lowell* v. *Stoklosa, ante,* 52, and *Spector* v. *Building Inspector of Milton, ante,* 63, this day decided, that art. 60 of the Amendments to the Constitution of Massachusetts is not in conflict with the Constitution of the United States, that the provisions of G. L. c. 40, §§ 25–30, enacted pursuant to that amendment are not violative of any provision of the Constitution of this Commonwealth or of the Constitution of the United States and that zoning ordinances or by-laws reasonable in their terms are valid whereby the territory of a municipality is divided into districts for trade, business, and manufacture and other districts wholly for residence from which trade, business and manufacture as commonly understood are excluded. See *Opinion of the Justices,* 234 Mass. 597. These decisions and the principles there stated are accepted as the basis for the determination of the cases at bar. It follows as the inevitable consequence of these decisions that the zoning by-law of Brookline as originally adopted, dividing its territory into the three districts hereinbefore described, was valid. It was not violative of any right guaranteed by the Constitution of the United States or of this Commonwealth and was within the scope of G. L. c. 40, §§ 25–30, conferring upon towns the power to pass zoning by-laws.

The question remains whether the amendment to the by-law, establishing a new zone within which buildings shall

only be used or constructed for single-family resident purposes, is valid. We assume that this provision was not intended to apply to buildings existing at the time of the adoption of the by-law and then already put to uses different from those authorized by the by-law. G. L. c. 40, § 29.

The right to enjoy life and liberty and to acquire, possess and protect property are secured to every one under the Constitution of Massachusetts and under the Constitution of the United States. These guaranties include the right to own land and to use and improve it according to the owner's conceptions of pleasure, comfort or profit, and of the exercise of liberty and the pursuit of happiness. *Wyeth* v. *Cambridge Board of Health,* 200 Mass. 474. These rights are in general subject to the exercise of the police power. They are not absolute and unqualified. Liberty may be thought the greatest of all rights. But liberty does not mean unrestricted license to pursue the mandates of one's own will. Liberty is regulated by law to the end that there may be equal enjoyment of its blessings by all. " Liberty implies the absence of arbitrary restraint, not immunity from reasonable regulations and prohibitions imposed in the interests of the community." *Chicago, Burlington & Quincy Railroad* v. *McGuire,* 219 U. S. 549, 567. *Crowley* v. *Christensen,* 137 U. S. 86, 89. *Jacobson* v. *Massachusetts,* 197 U. S. 11, 26. The right to own and enjoy property is no more sacred than liberty. It stands on no firmer foundation than liberty. The police power in its reasonable exercise extends to ownership of land as well as to the enjoyment of liberty. *Commonwealth* v. *Badger,* 243 Mass. 137, 141, and cases there collected. The police power is recognized as an attribute of government. It may be put forth in any reasonable way in behalf of the public health, the public morals, the public safety and, when defined with some strictness so as not to include mere expediency, the public welfare. *Commonwealth* v. *Strauss,* 191 Mass. 545, 550.

In *Lawton* v. *Steele,* 152 U. S. 133, 137, it was said, " To justify the State in thus interposing its authority in behalf of the public, it must appear, first, that the interests of the public generally, as distinguished from those of a particular

class, require such interference; and, second, that the means are reasonably necessary for the accomplishment of the purpose, and not unduly oppressive upon individuals. The Legislature may not, under the guise of protecting the public interests, arbitrarily interfere with private business or impose unusual and unnecessary restrictions upon lawful occupations. In other words, its determination as to what is a proper exercise of its police powers is not final or conclusive, but is subject to the supervision of the courts."

Restriction of the use of land to buildings each to be occupied as a residence for a single family may be viewed at least in two aspects. It may be regarded as preventive of fire. It seems to us manifest that, other circumstances being the same, there is less danger of a building becoming ignited if occupied by one family than if occupied by two or more families. Any increase in the number of persons or of stoves or lights under a single roof increases the risk of fire. A regulation designed to decrease the number of families in one house may reasonably be thought to diminish that risk. The space between buildings likely to arise from the separation of people into a single family under one roof may rationally be thought also to diminish the hazard of conflagration in a neighborhood. Statutes designed to minimize this hazard by regulations as to mechanical construction, air spaces and similar contrivances are familiar and have been upheld. *Stevens, landowner*, 228 Mass. 368, and cases there collected. We cannot say that it may not be a rational means to the same end to require that no more than one family inhabit one house, where conditions as to population permit.

It may be a reasonable view that the health and general physical and mental welfare of society would be promoted by each family dwelling in a house by itself. Increase in fresh air, freedom for the play of children and of movement for adults, the opportunity to cultivate a bit of land, and the reduction in the spread of contagious diseases may be thought to be advanced by a general custom that each family live in a house standing by itself with its own curtilage. These features of family life are equally essential or equally advan-

tageous for all inhabitants, whatever may be their social standing or material prosperity. There is nothing on the face of this by-law to indicate that it will not operate indifferently for the general benefit. It is matter of common knowledge that there are in numerous districts plans for real estate development involving modest single-family dwellings within the reach as to price of the thrifty and economical of moderate wage earning capacity.

This provision of the by-law does not extend to the entire territory of the town. That is not such inequality as denies equal protection of the laws to those within the restricted area. Reasonable classification as to the designation of areas as well as in other respects must be permitted to the law-making power. See *Holcombe* v. *Creamer*, 231 Mass. 99, 104–107, and cases there collected. *Commonwealth* v. *Libbey*, 216 Mass. 356. *Opinion of the Justices*, 220 Mass. 627. That is a necessary corollary of a zoning law of any kind.

The question to be decided is not whether we approve such a by-law. It is whether we can pronounce it an unreasonable exercise of power having no rational relation to the public safety, public health or public morals. We do not see our way clear to do that. In reaching this conclusion we are not unmindful of decisions either reaching the opposite conclusion or having a contrary appearance. See *Inspector of Buildings of Lowell* v. *Stoklosa, ante,* 52, for a collection of cases. We think the sounder reasoning and the weight of authority supports the conclusion we have reached.

The petitioners have no special and peculiar immunity arising from the fact that permits had been issued to them. They had begun work pursuant to those permits, although such work had not progressed very far. *Commonwealth* v. *Atlas,* 244 Mass. 78. Permits of the nature here in question do not constitute a pure personal privilege. When acted upon by the landowner, they cannot commonly be revoked by the licensing board in the absence of special power to that end or a change in legislation. *General Baking Co.* v. *Street Commissioners of Boston,* 242 Mass. 194, 197, and cases collected. The revocation of the permits in the case at bar

rests exclusively upon the change in the by-law and not upon a change of mind in the licensing officer.   We have already decided that that by-law was a valid exercise of the power conferred upon the town by a constitutional statute.   Since the petitioners had only barely begun work pursuant to their permits, they had acquired no vested rights against a change in the by-law by the exercise of the law-making power.   The circumstance, that contracts of the petitioners with third. persons, entered into before the passage of the amendment of the by-law, may be affected, does not impair the by-law in its constitutional phases when once it has been determined that in general it is a valid exercise of the police power.   All property is held subject to the police power.   *Commonwealth v. R. I. Sherman Manuf. Co.* 189 Mass. 76, 81.   *Spector v. Building Inspector of Milton, ante,* 63.   *Manigault v. Springs,* 199 U. S. 473, 480.   *Union Dry Goods Co. v. Georgia Public Service Corp.* 248 U. S. 372, and cases there reviewed.   *Edgar A. Levy Leasing Co. Inc. v. Siegel,* 258 U. S. 242, 249.   *Opinion of the Justices,* 234 Mass. 597, 608-611, and cases there reviewed.   There is no exemption in the by-law as amended respecting the completion of work under permits already issued.   It may be that the time required as preliminary to the passage of the amendment, with opportunity for hearing to all objectors, G. L. c. 40, § 30, is an incident of practical importance in this connection.   The case at bar upon that point is governed in principle by *Salem v. Maynes,* 123 Mass. 372.   In that case, before there was any ordinance on the subject, the defendants had begun work on the cellar, had made a contract for the erection of a proposed wooden building and had bought and prepared lumber to carry out that contract.   Thereafter an ordinance was passed which defined the height of wooden buildings in that locality, the area and distance of such building from any other wooden building. The proposed building of the defendant did not comply with the ordinance.   In a suit for the removal of the building it was held that the plaintiff was entitled to a decree.   It was said by Chief Justice Gray, speaking for the court, "All contracts between individuals, and even charters granted by the State, are subject to the exercise of this [the police] power.

. . . The facts, that before the passage of the ordinance, the defendants had begun work on the cellar upon the site of the proposed building, and had made a contract between themselves for the erection of the building, and had bought and prepared lumber to carry out that contract, does not exempt them from the operation of the ordinance." *Ayer* v. *Commissioners on Height of Buildings in Boston,* 242 Mass. 30. *Opinion of the Justices,* 234 Mass. 597, and cases reviewed at pages 608–611.

The case at bar is distinguishable from *Dobbins* v. *Los Angeles,* 195 U. S. 223, where there was a distinct allegation in the bill (to be taken as the fact on that record on demurrer to the bill), that the ordinance was enacted with express purpose to harm the plaintiff and to favor his rival in business and not to regulate the use of land in the public interest and as a police measure, and where the facts as to the situation and conditions demonstrated the exercise of the police power to be in such manner as to oppress or discriminate against a class or an individual. *Yick Wo* v. *Hopkins,* 118 U. S. 356. No such facts are disclosed in the case at bar.

It seems plain to us that the work already done by the petitioners did not constitute " existing structures " within the meaning of those two words in G. L. c. 40, § 29. In that connection those words signify something more than a mere beginning toward the erection of a building. See *Commonwealth* v. *Atlas,* 244 Mass. 78.

The result is that the petitioners fail to show any ground for relief.

*Petitions dismissed.*