## Gheen v. Mencer et al.

*John C. Youngman*, of *Candor, Youngman & Gibson*, for plaintiff.

*Clyde E. Carpenter*, of *Carpenter & Carpenter*, and *Charles Bidelspacher, Jr.*, of *Bidelspacher & Bidelspacher*, for defendants.

WILLIAMS, J., January 8, 1945.—On April 2, 1920, the Borough of Jersey Shore passed an ordinance fixing fire limits and regulating the building, erecting, rebuilding, and removing of buildings, which ordinance also provided for securing building permits and fixed a penalty for its violation.

Section 5 of this ordinance reads as follows:

"No building of any nature, whatsoever, exceeding the size mentioned above shall be built, rebuilt, remodeled within the borough limits after the passage of this ordinance, without the owner or owners thereof first obtaining a permit therefor from the Building Committee of the said borough, for which said permit a fee of $1 shall be charged."

Plaintiff, who is a coal dealer within the Borough of Jersey Shore, on December 6, 1943, requested the Secretary of the Borough of Jersey Shore to issue to him a building permit. The permit was for "scale and coal bins" on the "Annie Edsall Lot no. 214". On this date he was given a slip of paper in the form of a permit but was told that it had to be approved by Council of Borough of Jersey Shore and on the paper was written "Subject to Council approval".

He was refused a permit by the borough council on January 3, 1944.

At the time the request for permit was made the owner of the lot for which the permit was desired was Annie Edsall. At the time the request was refused Annie Edsall had died and her heirs then owned the lot. Testimony of plaintiff indicates that when he made his request for permit he had an oral agreement with Annie Edsall to purchase the lot for $2,000, although he had paid nothing to Annie Edsall on the purchase price.

On January 13, 1944, plaintiff entered into a written agreement with the heirs of Annie Edsall, in which he again agreed to purchase for $2,000, provided he was successful in his request for permit. If he was not successful in getting the permit, this agreement was to be null and void. If a lawsuit for securing the permit was successful then plaintiff was to pay one half of the costs of this lawsuit and the Annie Edsall heirs were to pay the other half.

On January 25, 1944, plaintiff entered into a third agreement with the Annie Edsall heirs in which he agreed to purchase the lot for $1,000. Both agreements with the Annie Edsall heirs were in writing.

From the time of the request for permit on December 6, 1943, until January 13, 1944, when the first written agreement was made, plaintiff took no specific act of possession except that on January 13, 1944, he shoveled snow from the sidewalk in front of the lot. He paid nothing on the purchase price until on or after January 25, 1944.

An alternative writ of mandamus was obtained against defendants on February 3, 1944, to show cause why defendants should not issue permits to plaintiff to entitle him to construct a coal dock, scales, driveways, and a concrete culvert over Lawshe Run on the Annie Edsall lot.

According to plaintiff's request on December 6, 1943, he desired to erect scales and coal bins whose dimensions would be 12 by 16 feet. By mandamus proceedings

he asks the court to make defendants give him a permit for a much larger building.

Lawshe Run is a public stream and runs through part of the Annie Edsall lot. In order for plaintiff to use the lot for the desired purposes he would have to bridge or culvert the run or at least part of the same. According to the laws of Pennsylvania it would be necessary for him to secure a permit to do this from the Water and Power Resources Board of the Commonwealth of Pennsylvania. Plaintiff knew this was necessary but up until the time of hearings had secured no permit.

The Borough Council of Jersey Shore appointed a zoning commission on February 7, 1944. A zoning ordinance was introduced into the council on March 6, 1944, and was finally approved April 3, 1944. The terms of this ordinance exclude plaintiff from building a coal dock on the property which he has now purchased.

Plaintiff knew on January 20, 1944, that an ordinance was contemplated, but despite this knowledge he agreed again for purchase of the same.

Plaintiff has been operating as a coal dealer in the Borough of Jersey Shore for a number of years. He purchases coal from the mines and in the past has been screening it in a dock to which the coal has been hoisted by means of belt and bucket conveyer. The lot for which he desires a permit is on one of the main thoroughfares of Jersey Shore. If a permit is granted, he expects to screen the coal without the use of belt and bucket conveyers because of the different elevation of the Annie Edsall site. An ordinance of the borough makes it necessary to weigh all coal sold within its limits on scales situated within its limits, and but few sites are available to the defendant which will meet his requirements for a coal dock.

After several preliminary motions had been argued and several hearings held, the case came before the court for determination without a jury.

The two questions seem to be whether or not the borough officials were legally justified in withholding a permit from plaintiff, and if they were not legally justified whether or not the subsequent ordinance is effectual to prevent mandamus, even though the ordinance was passed after the mandamus action was started. In passing upon the latter question it is important to determine if plaintiff has any vested rights in the permit.

Plaintiff's main argument seems to be based upon the idea that he, by applying for a permit and by filing this mandamus suit to compel issuance of the same, became invested with an absolute right to the permit which could not be divested by any subsequent legislation of the borough council. With this we cannot agree.

Every person holds his property subject to the proper exercise of the police power and this ordinance is police regulation, necessary for the safety and well-being of the people of the borough. The exercise of this power is essential to the well-being of the borough, and the court is without power to command the borough officers to issue a permit which is now forbidden by law.

The fact that one contemplating the erection of a particular building applies for a permit and institutes proceedings to compel issuance, prior to the enactment of a zoning ordinance the effect of which is to prohibit the erection of the proposed building, confers no vested rights as of that time, and so does not bring him within the rules which forbid giving retroactive effect to such an ordinance: Spector v. Building Inspector of Milton, 250 Mass. 63, 145 N. E. 265; Brett v. Building Commissioner of Brookline, 250 Mass. 73, 145 N. E. 269; McEachern v. Town of Highland Park et al. (Tex.), 34 S. W. (2d) 676; Cayce v. Hopkinsville et al. 217 Ky. 135, 289 S. W. 223; Wheat et ux. v. Barrett (Calif.), 290 Pac. 1033; Baxley v. Frederick et al. (Okla.), 271 Pac. 257; Berger v. City of Salem et al. (Ore.), 284 Pac. 273; Rohrs v. Zabriskie et al. (Sup. Court of N. J.), 133 Atl. 65; In re Cherry, 193 N. Y. Supp. 57;

Gulf Refining Co. v. McKenan (N. C.), 102 S. E. 505; Huetsch v. Grove, 23 Berks 154.

Plaintiff also argues that he received a permit and that the qualification, "Subject to Council approval", which was placed on the permit form when he made his application means nothing. Even though it were held that this was a permit it would make no difference in the ruling.

Unless the holder of a permit previously issued does something of substantial character toward construction of the building in question before enactment of the zoning ordinance, he acquires no vested rights by virtue of the permit to erect the building: Clarke's Appeal, 37 D. & C. 670; City of Lansing et al. v. Dawley (Mich.), 225 N. W. 500; People ex rel. Ortenberg v. Bales, 229 N. Y. Supp. 550 (order affirmed without opinion in 250 N. Y. 598, 166 N. E. 339 (1929).

Whether or not the permit has already been granted or whether or not the mandamus action was started before the subsequent ordinance makes no difference. The very nature of such an ordinance is bound to work some hardship and will not please every person.

This case must be distinguished from those where an innocent person has received a permit and acting upon this permit has in good faith incurred obligations. In such a case a property right has been vested, protected by the Federal and State Constitutions: Herskovits et ux. v. Irwin et al., 299 Pa. 155. Plaintiff, Gheen, did not rely upon any permit when he purchased the "Annie Edsall" lot. He knew that he had been refused a permit and that there was likely to be an ordinance zoning the land that he proposed to purchase. Even though he considered he had a permit, he incurred no obligation in good faith.

Even though it were held that applying for a permit and filing a mandamus suit prior to zoning legislation vested a right, we would hesitate under the facts to grant plaintiff's prayer.

428

Mandamus is an extraordinary writ and is not granted as an absolute right, is discretionary, and is granted only in clear cases: Burgess v. Washington Camp No. 208, 155 Pa. Superior Ct. 45. Although this discretion is not an arbitrary one and is to be exercised in accordance with well-settled rules of law, equitable principles have much to do with every mandamus proceeding as every such proceeding seeks the aid of equity.

In addition, the burden is on plaintiff to show that he has performed every prerequisite condition necessary to compel action of the public official: Stegmaier v. Goeringer, 218 Pa. 499.

The circumstances surrounding plaintiff's purchase of the lot, the fact that he has taken no steps in order to determine what is necessary for a permit to cross the public run, and the fact that he asks in his mandamus proceedings for a larger building than in his permit application, would also probably lead us to refuse his petition.

And now, January 8, 1945, the writ is quashed, plaintiff to pay costs.