Deer Park Civic Association, Rodger M. Tauman, Jack Balkin, Maurice Balkin, Jerry Kayne and Sidney Waters, Plaintiffs-Appellants, v. The City of Chicago, Roy T. Christiansen, Commissioner of Buildings of City of Chicago, and C. P. Clare and Company, Defendants-Appellees.

Gen. No. 45,696.

Opinion filed June 18, 1952. Released for publication July 17, 1952.

JACOB SHAMBERG, of Chicago, for appellants.

SAMUEL T. LAWTON, JR., RICHARD JAMES STEVENS, and IRWIN J. ASKOW, all of Chicago, for appellees.

MR. PRESIDING JUSTICE KILEY delivered the opinion of the court.

Plaintiffs' amended complaint and defendant company's counterclaim are brought under the Declaratory Judgment Act. Ill. Rev. Stat. 1951, chap. 110, par. 181.1 [Jones Ill. Stats. Ann. 104.057 (1)]. Judgment was for defendant in most respects on its counterclaim and plaintiff has appealed. Defendant has cross-appealed from part of the judgment.

Plaintiffs are an association of resident property owners and several of its individual members from

that area of West Rogers Park known as Deer Park in the city of Chicago. They seek judicial declarations that defendant company has no vested right by virtue of its building permit to construct a manufacturing building in an area in Deer Park zoned for family dwelling; that the building permit was revoked by a subsequent zoning ordinance amendment; and that the Building Commissioner had the duty to prevent, and to take appropriate action to prevent, use of the area involved for any purpose other than family dwelling.

The property involved is about 8½ acres of vacant land bounded by Pratt Avenue on the north, an east-west line about 490 feet south of Pratt Avenue on the south, a north-south line about 125 feet west of North Whipple Street on the east, and by Kedzie Avenue on the west. In 1923 the property was zoned for apart-ment-house use except for the adjacent 125 feet to the east which was zoned for commercial use. In the Com-prehensive Zoning Ordinance of 1942, the area, except for the 125 feet, was zoned for manufacturing use. A permit to build its plant was issued to defendant company April 4, 1951. An amendatory zoning ordi-nance rezoning the area to family dwelling was passed March 2, and became effective April 19, 1951.

Defendant company designs, assembles and distrib-utes electronic relays and has contracts to supply the United States for military and related needs. Its plant facilities were inadequate and it purchased the prop-erty subject of this suit January 16, 1950. Two amend-ments, one in 1937 to the ordinance of 1923 and the other in 1948 to the ordinance of 1942, had been intro-duced but no further action taken. On February 13, 1951 the council committee on housing and zoning sent out notice of a hearing upon the proposed amendment of March, 1948. On February 14, 1951 defendant applied for a permit to build and furnished the plans and specifications. On February 16 the city of Chicago

348

Building and Zoning Committee considered the amendment introduced in March, 1948.

On March 2, 1951 three amendatory zoning ordinances were introduced in the City Council. One provided only for rezoning the area in this case from commercial and manufacturing use to family-dwelling use. This amendment was passed on the day it was introduced. A second amendment provided for rezoning an area immediately north, the abandoned Illinois Brick Company clay hole, from commercial and manufacturing to family-dwelling use. This ordinance was not passed that day but was set for hearing, and no further action has been taken. The third amendment providing for a similar change was set for hearing and no further action has been taken.

The questions presented here are whether plaintiffs are authorized to bring this suit; whether they were required to appeal to the Zoning Board of Appeals from the Commissioner's action before invoking the aid of the court; whether the amendment is invalid for non-compliance with statutory requirements of notice and hearing; and whether the zoning amendment which became effective April 19, 1951 revoked the building permit issued April 4th.

■■ Defendant claims plaintiffs have no direct or justiciable interest in the declaration sought and have shown no special damage to justify seeking what is, in effect, an injunction. Plaintiffs alleged that the individuals named as plaintiffs were residents of Deer Park, owners of real estate therein, and Chicago taxpayers, and that an actual and justiciable controversy existed between plaintiffs and defendants. Defendant admitted the second allegation. In its counterclaim, it asked for a judgment declaring, among other things, that there was an actual and justiciable controversy between plaintiffs and defendants. Defendant entered into a stipulation under the pleadings and proceeded

349

to trial on the theory that plaintiffs' interest was justiciable. Under these circumstances we think defendant company is in no position to complain.

The relief sought by plaintiffs is a judicial declaration that the building permit has been revoked and that the Building Commissioner had the duty to prevent the use of the areas for manufacturing use. If the permit was not revoked, the second declaration could not be made and accordingly the main relief sought relates to the effect of the amendment. When the permit was issued April 4, 1951 plaintiffs had the right of appeal to the Zoning Board of Appeals, but they were probably awaiting the course of the amendatory ordinance, depending upon its force to offset the action of the Commissioner. When the amendment became effective, a question of law arose determination of which is beyond the power of the Board of Appeals. We think the plaintiffs did not lose the right to bring this suit because they did not appeal to the Board. *Illinois Life Insurance Company v. City of Chicago,* 244 Ill. App. 185.

*Cann v. City of Chicago,* 241 Ill. App. 21, is not authority for defendant's point. There, plaintiff sought equitable relief but failed to show that he exhausted the statutory legal remedies of appeal to the Zoning Board and certiorari from a court. In *In re Wolf v. Village of Mt. Prospect,* 314 Ill. App. 23, the petitioner in mandamus had been denied a building permit, and he alleged the non-existence of a Board of Appeals to excuse his failure to appeal from the order denying the permit. The evidence showed that a Board did in fact exist and the court said that the right to coerce the Commissioner by mandamus was more than doubtful. It cited the *Cann* case as authority for the statement that the remedy in a "case of this kind is by certiorari to review the decision of the board of appeals."

(314 Ill. App. at 27.) In the instant case, plaintiffs' mandamus proceeding was abandoned.

■ In the record is a copy of the subject amendatory ordinance certified by the clerk. Nothing in the record shows that the ordinance was not regularly adopted. We presume, in the absence of a contrary showing, that the statutory requirements for validity of an ordinance were fulfilled.

■ The general rule is that any substantial change of position, expenditures, or incurrence of obligations under a building permit entitles the permittee to complete the construction and use the premises for the purpose authorized irrespective of subsequent zoning or changes in zoning. 8 McQuillin, Municipal Corporations 272 (3d ed.). The authorities differ on the degree of action that must be taken in order that the initial permit privilege ripen into a vested right. See *Fitzgerald v. Merard Holding Company,* 110 Conn. 130, 147 Atl. 513; *Crow v. Board of Adjustment of Iowa City,* 227 Iowa 324, 288 N. W. 145; *Brett v. Building Com'r of Brookline,* 250 Mass. 73, 145 N. E. 269; *Omaha v. Glissmann,* 151 Neb. 895, 39 N. W. (2d) 828; *Fairchild Sons, Inc. v. Rogers,* 246 App. Div. 555, 282 N. Y. Supp. 916; *Southern Leasing Company v. Ludwig,* 168 App. Div. 233, 153 N. Y. Supp. 545; *Rice v. VanVranken,* 132 Misc. 82, 229 N. Y. Supp. 32; *Pelham View Apartments v. Switzer,* 130 Misc. 545, 224 N. Y. Supp. 56; *Howe Realty Company v. Nashville,* 176 Tenn. 405, 141 S. W. (2d) 904.

Both parties cite *Omaha v. Glissmann,* 151 Neb. 895, 39 N. W. (2d) 828, in which the Supreme Court of Nebraska held that either substantial construction or substantial liabilities incurred relating directly to construction, or both, would protect a permittee against a subsequent ordinance. There, a decree against the permittee was affirmed because all that was done before

the subsquent ordinance became effective was "some grading." The cases cited by plaintiffs are distinguishable from the instant case because either there was no permit, no work was done, there was no evidence of work having been done, or the work had barely begun. In *Brett v. Building Com'r of Brookline,* 250 Mass. 73, 145 N. E. 269, a leading case, the work "had barely begun" and the inference is justified that had more work been done the permittees would have been protected.

No Illinois case on the precise question before us has been called to our attention. Defendant has cited *People ex rel. Deddo v. Thompson,* 209 Ill. App. 570, and Hurt v. Hejhal, 259 Ill. App. 221, in which this court applied equitable estoppel under circumstances which point the way to approval of the rule applied by the Nebraska court in the *Glissmann case.* We think that is the right rule.

There were no issues of fact. The judgment was founded on a stipulation. The court found that defendant, prior to the effective date of the amendatory ordinance and in reliance upon the zoning classification in effect at the time and upon its permit, paid $41,000 for the property, and made contracts for land and geological surveys and soil-test borings, fabrication of structural steel, stripping the top soil, architectural services, carpeting the premises, and general contracting work for construction of the building. The court also found that on these contracts defendant incurred liabilities of $597,826.56, and made payments on account of those contracts of $21,958.65. The court further found that before the effective date of the ordinance, architectural sketches were made, surveys made, soil tests made, and top soil stripped; that excavations for foundations, column and line wall footings were made and pumped dry; that form work for the column and line wall footings and foundations was

installed; that the building site was rough graded and underground sewer, water, drainage, and gas utility lines installed; and that the structural steel on order was 65% fabricated.

The trial court found that all of these things were done "either in reliance on zoning . . . or in reliance on the permit." Plaintiffs contend that the trial court erred in failing to differentiate between defendant's reliance on the zoning and its reliance on the permit. It is argued that only that which is done in reliance on the permit can bring about a vested right.

According to the stipulation of facts upon which the judgment was entered, all the contracts were made prior to the issuance of the permit. The contracts for construction of the plant and for carpeting, both of which total about $520,000, were made after defendant applied for the permit but before the permit issued. The stipulation does not show precisely when the work was done on the land. It shows payment on the contracts before the permit issued and after the effective date of the ordinance, but shows only one payment made in the interim and this on the carpeting contract.

██ Plaintiff says that "at most, it appears" that in the interim between the issuance of the permit and the effective date of the ordinance, the building site was rough graded, excavations for foundations and footings dug and pumped dry, underground sewer, drainage, water and gas lines installed, and form work for column and line wall footings and foundations installed. They pose the question whether these constitute substantial work under the permit. We think that the answer is yes.

██ This work was done in partial performance of contracts made before the permit issued and most of it was done under the construction contract made in the interim between the application for and issuance of the permit. This partial performance of contracts made in

reliance on the probability that the permit would issue and pursuant to substantial obligations relating directly to the purpose of the permit is, we think, sufficient to give rise to a vested right in the Clare Company.

For the reasons given, the judgment is affirmed.

*Judgment affirmed.*

LEWE and FEINBERG, JJ., concur.