557 P.2d 532

**TOWN OF PARADISE VALLEY, a Municipal Corporation, Appellant,**

v.

**GULF LEISURE CORPORATION, Glen Wiltsey, and Midland National Bank, Appellees.**

**No. I CA–CIV 3304.**

Court of Appeals of Arizona,
Division 1,
Department A.

Oct. 26, 1976.

Rehearing Denied Nov. 30, 1976.

Petition for Review Denied Dec. 21, 1976.

Roger A. McKee, Paradise Valley, for appellant.

Burch, Cracchiolo, Levie, Guyer & Weyl by C. Michael Pierce, Phoenix, for appellees Gulf Leisure Corp. and Glen Wiltsey.

Rawlins, Ellis, Burrus & Kiewit by Michael V. Mulchay, Phoenix, for appellee Midland Nat. Bank.

## OPINION

NELSON, Judge.

This is an appeal from a summary judgment granting the appellees declaratory and injunctive relief against the appellant regarding its purported arbitrary and capricious refusal to extend a "Special Use Permit". The trial court declared the appellant's actions void ab initio and unconstitutional and ordered the appellant to allow the appellees to continue construction of a 148-suite resort hotel.

The issues presented here are six-fold:

1. Were the actions taken and the reasons denominated by the appellant in refusing extension of the Special Use Permit arbitrary and capricious?

2. Did the appellees have a vested right in the property prohibiting the alleged arbitrary and capricious denial of the extension request and warranting the injunctive relief given by the trial court?

3. Were there material issues of fact preventing the trial court from extending the original Building Permits by summary judgment?

4. Were the appellees required to exhaust their administrative remedies prior to seeking judicial relief?

5. Was the trial court precluded by A. R.S. § 12–1802 from granting injunctive relief against the appellant, a municipality?

6. Did the trial court properly award the appellees costs against the appellant?

The real property in controversy consists of 18.844 acres located on the southeast corner of Scottsdale Road and Jackrabbit Road in the Town of Paradise Valley, Arizona. On January 11, 1973, the appellant, the Town of Paradise Valley, issued to S. N. Pickard a "Special Use Permit" authorizing the development of the property as a resort hotel consisting of 148 three-room suites. The controversial portion of the permit reads as follows:

"7. Building permits for the development of the resort hotel which is referred to in this Special Use Permit shall be taken out within one year from the date hereof and construction completed within two years from date of this Special Use Permit. Failure to comply with these dates shall automatically invalidate this Special Use Permit and the same shall be of no further force and effect. PROVIDED, HOWEVER, the owner of said real property shall have the right to apply to the Town Council for an extension of said Use Permit prior to the expiration thereof."

In reliance upon the issuance of this permit, Gulf Leisure Corporation (appellee), acting by and through its president and majority stockholder, Glen Earl Wiltsey (appellee), exercised an option procured in 1971 and purchased the property from S. N. Pickard. To finance the purchase and the intended hotel construction, Gulf and Wiltsey obtained two loans totaling $1,332,000[1] from Midland National Bank (appellee). On April 2, 1973 and November 8, 1973, deeds of trust were executed to secure the loans, with Gulf conveying the property to USLIFE Title Company of Arizona for the benefit of Midland.

The deeds of trust granted Midland the following powers as beneficiary:

"Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, but without obligation so to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may: *make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof, Beneficiary or Trustee being authorized to enter upon said property for such purposes; appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee*; pay, purchase, contest, or compromise any encumbrance, charge, or lien which in the judgment of either appears to be prior or superior hereto; and, in exercising any such powers, pay necessary expenses, employ counsel, and pay his reasonable fees." (Emphasis added)

On July 5, 1973, the Special Use Permit was slightly amended, changing the ownership name to Gulf and authorizing development according to a new site plan. Pursuant to the dictates of the Use Permit, Gulf on January 8, 1974 procured the appropriate Building Permits. Section 1411 of the Paradise Valley Zoning Ordinance (March 4, 1974), which pertains to building permits, states:

"*Section 1411 Limitation:*

A permit under which no work is commenced within six (6) months after issuance shall expire by limitation."

"Work" was therefore required to be begun by July 8, 1974. The record is clear that actual construction of the physical facility had not been started by July 8, 1974, but it is uncertain whether any other

---

1. Although $1,332,000 was originally borrowed by Gulf and Wiltsey, only $1,032,000 remained outstanding on the loans at the time the extension of the Use Permit was applied for, infra.

"work" was initiated during the six month period.

Nevertheless, the factual portrait is vivid that as of December 23, 1974, Gulf and Wiltsey were in serious financial straits due to the energy crisis and a recession and the actual commencement of construction of the physical facility of the resort had not been commenced. Moreover, Gulf and Wiltsey had already expended the following preparatory sum of $1,448,200:

| | | |
|---|---|---|
| (1) | Purchase of land | $1,100,000 |
| (2) | Architectural fees | 260,000 |
| (3) | Feasibility studies | 25,000 |
| (4) | Overhead expenses | 50,000 |
| (5) | Building permits | 5,200 |
| (6) | Clearing of land | 8,000 |

With it conclusive that Gulf and Wiltsey would be unable to complete construction of the resort within the two-year period, as required by the Use Permit, Midland's attorney, proceeding upon what he construed as authority in the deeds of trust and the Use Permit itself, filed an application with the Paradise Valley Town Council on December 23, 1974, requesting an extension of the Use Permit.

Over Midland's attorney's objection, however, the Council forwarded the extension application to the Paradise Valley Planning and Zoning Commission. On January 21, 1975, the Commission denied the request. The three bases for the denial were:

(1) Since the original Use Permit had expired on January 11, 1975, or ten days earlier, the Use Permit was "dead" and could not be extended.

(2) Since Midland was only the "equitable" owner of the property and not the "legal" owner, and since it was the only party requesting the extension, not Gulf or Wiltsey, it did not have "standing" to make the request.

(3) Since the land comprised only 18.844 acres, which satisfied the 15-acre minimum of old Section 1101(k) of the Paradise Valley Zoning Ordinance when the original Use Permit was issued and since the new minimum as of March 4, 1974, was 20 acres, the extension could not be granted because the acreage failed to meet the new minimum.

At the time of this Commission meeting, Wiltsey had already commenced bankruptcy proceedings and therefore all further matters regarding the property were held in abeyance until April 16, 1975. On that date, the Honorable Vincent D. Maggiore, Judge of Federal Bankruptcy Court for the District of Arizona, found that Midland, Gulf and Wiltsey had expended approximately $1,500,000 in reliance upon the Use Permit to construct the resort hotel, which the judge believed to be a reasonable use of the property. Judge Maggiore then ordered the triumvirate to "pursue every available administrative and legal remedy to obtain an extension of the Special Use Permit."

Accordingly, Midland's and Gulf's counsel appeared before the Paradise Valley Town Council on April 24, 1975, and renewed the December 23, 1974 extension request. The Town Council denied the request, apparently on the same three grounds upon which the Commission based its denial. It was suggested, however, by Mayor Tribken of the Council that the trio either seek a variance and then a *new* Special Use Permit or buy additional acreage to satisfy the 20-acre minimum and then apply for a new permit.

Midland, Gulf and Wiltsey disagreed with the Council's decision and with Mayor Tribken's suggestion and filed a special action and declaratory judgment complaint in the Maricopa County Superior Court seeking equitable relief to force the appellant to allow construction to continue under the Use Permit and the appurtenant building permits. In granting summary judgment for the appellees, the trial court held that the denial of the extension was "unconstitutional and void ab initio" and ordered

the appellant to allow construction of the resort in accordance with the previously issued permits. It is from this judgment the appellant is appealing.[2]

## REFUSAL OF USE PERMIT EXTENSION REQUEST

At the outset, it must be noted for purposes of our discussion that no distinction is drawn between "special use permit", "variance", "rezoning", "amendment", or "building permit" with regard to Paradise Valley. All these terms, while technically different in vaious circumstances, 101 C.J. S. *Zoning* §§ 268–275, have no real significance, at least as to their generally accepted usage, to the manner Paradise Valley zones its community. Paradise Valley zones its entire area R–43 (residential with one-acre lots) and allows variations to this singular zoning through the utilization of "special use permits", "amendments" or "variances". In effect, Paradise Valley through these devices re-zones its area to accommodate new uses. We will treat all these terms synonymously. [See 101 C.J.S. *Zoning* §§ 274–275].

■ Judicial power to inquire into, review or set aside municipal zoning ordinances, variances, or special use permits is subject to definite historical limitations arising from the nature of zoning as administrative and legislative, and from the separation of the judiciary from the legislative branch. 8A McQuillin, *The Law of Municipal Corporations*, § 25.278 (3d ed. 1965). Since the actions of a municipality and/or its zoning board or commission are quasi-administrative and legislative in character, the judiciary is reluctant to intervene except when there is an abuse of discretion, an excessive use of power, error of law, a lack of good faith, or an act of unreasonableness or irrationality committed. *McQuillin*, supra; 62 C.J.S. *Municipal Corporations* § 199 at p. 372.⁻

In this controversy, the appellant argues that its actions and reasons for denying the extension request were reasonable. It is not contended by either party that the original Use Permit was unreasonable and that it did not serve the public health, safety and welfare of Paradise Valley. See *Village of Euclid, Ohio v. Ambler Realty Co.*, 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926). It is, however, asserted by the appellees that the appellant acted arbitrarily and capriciously in denying the extension petition.

■ The operative language of Section 7 of the Special Use Permit, supra, states that construction of the hotel had to be *completed* within two years from the date of the Use Permit issuance or else it would lapse. Appellees do not contend this condition was unreasonable, and as a matter of general law, municipalities may impose appropriate restrictions with regard to the issuance of use or building permits. 9 McQuillin, *The Law of Municipal Corporations*, § 26.204 (3d ed. 1965).

The appellees thus agreed to and relied upon this condition, fully cognizant of the fortuities that could frustrate completion of the project by the two-year deadline. As to the condition that building permits would have to be applied for and received by January 11, 1974, the appellees accepted and conformed to this mandate by obtaining the documents in a timely fashion.

The quarrel arises, however, regarding the clause in the Special Use Permit stating that:

" . . . the owner of said real property shall have the right to apply to the Town Council for an extension of said Use Permit prior to the expiration thereof."

Midland applied for an extension on December 23, 1974, when it became certain that construction would not be completed

---

2. Appellees, after perfection of this appeal by the appellant, filed a special action in the Arizona Supreme Court seeking immediate relief concerning the implementation of the summary judgment. The Supreme Court declined jurisdiction. This issue is not before this Court.

by January 11, 1975. Moreover, Midland applied to the Town Council, as specified in the permit. Nevertheless, the application was forwarded to the Planning and Zoning Commission for consideration. On January 21, 1975, the Commission refused to act on the extension for the three reasons cited earlier.

■ From the record, it appears this decision was the final action taken by the Commission and that no formal recommendation was forwarded to the Town Council. The Town Council's decision of denial on April 24, 1975 of the appellees' renewal petition of December 23, 1974 request was not in review of the Commission's actions but nevertheless was based on the same propositions as those characterizing the Commission's inaction.

The transferral of the December 23rd application to the Commission was in violation of an express condition of the Use Permit. Furthermore, if such referral was allegedly in accordance to the new procedure enunciated in the Zoning Ordinance adopted on March 4, 1974, the final action by the Commission and its failure to forward a recommendation to the Town Council for final action was a violation of Section 1102 of the new Paradise Valley Zoning Ordinance.

But beyond these procedural transgressions committed by the appellant are the trio of reasons propounded in denial of the extension request. First, the rationale that since the Permit expired on January 11, 1975, and since hearings were not held until January 21, 1975 and April 24, 1975, the Use Permit could not be extended because it was "dead" is meritless.

■ Midland filed its request December 23, 1974. The Use Permit itself provides that an extension may *only* be applied for if done so before January 11, 1975. This can only reasonably mean that the application must be filed before January 11, 1975, not that the hearing and extension be granted before this date.

This issue is analogous to the statute of limitations dilemma faced by the court in *Taylor v. Superior Court in and for County of Maricopa,* 13 Ariz.App. 52, 474 P.2d 59 (1970). Speaking about the language of A.R.S. § 12–542, the court stated:

" 'Commenced and prosecuted within two years' does not mean that the case must be brought to a conclusion in two years, rather it means that the action must be commenced within two years, and must thereafter be prosecuted with reasonable diligence." 13 Ariz.App. at 54, 474 P.2d at 61.

If construction of this phrase in the Permit were as the appellant proffers, procrastination would be an attractive and very effective strategem to those who would seek to defeat any extension request. The extension petition was filed timely.

■ With regard to the second reason cited by the appellant, towit, that Midland as beneficiary of the deeds of trust is only an "equitable" owner and not the "legal" owner of the property and thus had no "standing" to request the extension, it is recognized that a municipality is free to adopt its own standards governing standing to appear before it, so long as those standards are consistent with due process requirements. *Duddles v. City Council of West Linn,* 535 P.2d 583 (Or.App.1975).

In *Association of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970), the United States Supreme Court spoke dispositively on the issue of whether the plaintiff had "alleged such a personal stake in the outcome of the controversy" to have standing to invoke federal jurisdiction. The court specified the acid test to concern:

". . . [T]he question whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee

in question." 397 U.S. at 153, 90 S.Ct. at 830, 25 L.Ed.2d at 188.

Later, in *Sierra Club v. Morton,* 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972), the court further explained:

"Where the party does not rely on any specific statute authorizing invocation of the judicial process, the question of standing depends upon whether the party has alleged such a 'personal stake in the outcome of the controversy,' *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663, as to ensure that 'the dispute sought to be adjudicated will be presented in an adversary context and in a form historically viewed as capable of judicial resolution.' *Flast v. Cohen,* 392 U.S. 83, 101, 88 S.Ct. 1942, 1953, 20 L.Ed.2d 947." 405 U.S. at 732, 92 S.Ct. at 1364, 31 L.Ed.2d at 641.

Finally, this Court in *Chambers v. United Farm Workers Organizing Committee, AFL–CIO,* 25 Ariz.App. 104, 541 P.2d 567 (1975), recognized that:

" 'Standing' focuses on the parties and requires that each party possess an interest in the outcome of the litigation." 25 Ariz.App. at 106, 541 P.2d at 569.

■ While it is accepted that the above tests pertain to "standing" to invoke judicial jurisdiction, "due process" considerations are equally applicable to the standing requirements necessary to appear before a municipal council or commission. We therefore find that Midland possessed the essential stake in the viability of the Use Permit to be a proper party to request an extension of its existence.

The facts reveal that Midland loaned $1,332,000 to Gulf and Wiltsey to purchase the acreage and to construct the hotel. Midland had two deeds of trust to secure the loans. Not only do the deeds contain language allowing Midland to appear and to take any action necessary to protect its interest in the property, but A.R.S. §§ 33–801 and 33–806 authorize similar agency status activity.

It is difficult to see that Midland was not "arguably within the zone of interests to be protected or regulated" by A.R.S. §§ 33–801 and 33–806, as the appellant contends. *Association of Data Processing Service Organizations, Inc. v. Camp,* supra. Furthermore, it is impossible to understand how Midland could have any less "a personal stake" in the extension of the Use Permit as Gulf or Wiltsey. *Sierra Club v. Morton,* supra. Lapsing of the permit would forebode a potential loss of $1,032,000 in loans to Gulf and Wiltsey because both were stricken by financial calamity on December 23, 1974, with no prospect in sight to commence or complete construction by January 11, 1975. A reasonable alternative available for Midland to salvage its million dollar investment would be to secure an extension of the Use Permit and attempt to arrange for construction itself. Certainly as beneficiary of the deeds of trust, Midland had "standing" to make such a request.

■ As to the third rationale, the appellant alleged that extension of the Permit would violate the amended ordinance requiring a 20-acre minimum for construction of resort hotels. The record reveals that the original Use Permit was issued when there existed a 15-acre minimum. The property is 18.844 acres. Nearly $1.5 million had been expended by the appellees in reliance upon the parameters under which the permit was issued. To allow the appellant to change the acreage minimum "midstream" would constitute a violation of due process. U.S.Const. Amend. XIV; Ariz.Const. Art. 2, § 4. Once a building permit and/or a special use permit are issued as duly authorized by law, as in this case, and the permittee has materially acted in reliance thereon and the guidelines delimited therein, the right to continue under those rules is vested and a municipality may not arbitrarily revoke or change the rules under which the permit was issued. Cf. *Phoenix City Council v. Canyon Ford, Inc.,* 12 Ariz.App. 595, 473 P.2d 797

(1970); 1 Yokley, *Zoning Law and Practice*, § 9–5 (3d ed. 1965).

## VESTED RIGHT IN USE PERMIT

Despite the fact that the actions taken and the reasons denominated by Paradise Valley were arbitrary and capricious, did the appellees nevertheless possess a sufficient vested right in the property warranting the trial court's extension of the Use Permit to allow completion of construction of the hotel? We hold that the appellees possessed the requisite vested right. The courts have generally held that where a special use or building permit has been legitimately issued and the permittee has substantially relied thereupon and incurred considerable expenses, the right to continue construction under such permit becomes a vested right which a municipality has no right to violate without good cause or in the absence of any public necessity. *Phoenix City Council v. Canyon Ford, Inc.*, supra; *Yokley*, supra.

The courts are split, however, as to what point substantial reliance is present to prohibit arbitrary revocation of a permit. Some states hold that no actual physical construction need be commenced but that substantial monetary expenditures, the invocation of considerable contractual commitments, and extensive preparatory proceedings will give rise to a protectible property right. *American National Bank and Trust Company of Chicago v. City of Chicago*, 19 Ill.App.3d 30, 311 N.E.2d 325 (1974); *A. C. Nelson Enterprises, Inc. v. Cook*, 188 Neb. 184, 195 N.W.2d 759 (1972); *Crawford v. McLaughlin*, 172 Colo. 366, 473 P.2d 725 (1970); *Tremarco v. Garzio*, 32 N.J. 448, 161 A.2d 241 (1960); *Olsen v. City of Minneapolis*, 263 Minn. 1, 115 N.W.2d 734 (1962); *Rosenberg v. Village of Whitefish Bay*, 199 Wis. 214, 225 N.W. 838 (Wis.1929); *Yokley*, supra; 58 Am.Jur. *Zoning*, § 182.

The position of these courts is succinctly summarized in *Deer Park Civil Ass'n v. City of Chicago*, 347 Ill.App. 346, 106 N.E.2d 823 (1952), wherein it was stated:

"The general rule is that any substantial change of position, expenditures, or incurrence of obligations under a building permit entitles the permittee to complete the construction and use the premises for the purpose authorized irrespective of subsequent zoning or changes in zoning. 8 McQuillin Municipal Corporations, 272 (3rd ed.)." 347 Ill.App. at 351, 106 N.E.2d at 825.

There are other states, however, which hold that a vested right is not conceived until commencement of construction of the physical structure is begun and that the payment of a large purchase price for the property and architectural assistance is irrelevant and inconsequential. *County Council for Montgomery County v. District Land Corporation*, 274 Md. 691, 337 A.2d 712 (1975); *Gosselin v. City of Nashua*, 114 N.H. 447, 321 A.2d 593 (1974); *Ross v. Montgomery County*, 252 Md. 497, 250 A.2d 635 (1969); *Smith v. M. Spiegel & Sons, Inc.*, 31 A.D.2d 819, 298 N.Y.S.2d 47 (1969); *Clark v. General Electric Co.*, 243 Ark. 399, 420 S.W.2d 830 (1967); *Yokley*, supra.

We are persuaded by the first position. Although there are no Arizona decisions directly on point, the court in *Phoenix City Council v. Canyon Ford, Inc.*, supra, discussed the vested right theory and the equitable considerations involved. Even though the court found against the particular permittee in that case because the facts revealed that the acts of reliance were performed before the issuance of the permit, it recognized that estoppel is the basis of the vested right rationale and inferred that under appropriate circumstances the theory should be invoked.

We feel this is the proper case. The facts indicate that it was not until after the Use Permit was issued to S. N. Pickard that Gulf decided to exercise its option to purchase the property. Once the purchase was made for $1,100,000, Gulf expended another $400,000 in architectural fees, feasibility studies, building permits,

overhead expenses, and the clearing of the land. It is evident that the appellees detrimentally relied upon the provisions of the Permit; that they seriously intended to construct the resort hotel; and that unforeseen difficulties temporarily frustrated commencement of actual construction.

It is equally clear that the appellant's reasons for its refusal to extend the permit were meritless and that the appellant made no effort to determine whether continued construction would be adverse to the health, safety and welfare of Paradise Valley. *Village of Euclid, Ohio v. Ambler Realty Co., supra.*

Furthermore, examination of the record indicates that there is no good cause or changed circumstances to warrant denial of the extension of the Use Permit as the basis of adversity to the welfare of the community of Paradise Valley. Under these facts, the appellees obtained a vested right to continue construction under the original Use Permit.

## EXTENSION OF BUILDING PERMITS

In its order granting summary judgment for the appellees, the trial court ordered the appellant to allow construction under the previously issued Building Permits.

A motion for summary judgment should be granted only when the record demonstrates that there are no material questions of fact, and that as a matter of law, the moving party is entitled to summary judgment. *Gibson v. W. D. Parker Trust*, 22 Ariz.App. 342, 527 P.2d 301 (1974). Thus, summary judgment should not be granted when, from examination of the entire record, there exists the slightest doubt as to the facts. *Krumtum v. Burton*, 111 Ariz. 448, 532 P.2d 510 (1975); *Bendalin v. Valley National Bank of Arizona*, 24 Ariz.App. 575, 540 P.2d 194 (1975); *Byars v. Arizona Public Service Co.*, 24 Ariz.App. 420, 539 P.2d 534 (1975).

The record reveals that Gulf procured the issuance of the appropriate Building Permits on January 8, 1974. Section 1411 of the Paradise Valley Zoning Ordinance, as adopted March 4, 1974, and which codified the previous law, states that if "no work is commenced" within six months from the issuance of a permit, such permit will automatically expire.

The record is unclear whether "work" was commenced between January 8, 1974 and July 8, 1974. The trial court made no findings of fact; it simply extended the Building Permits. A question of fact exists as to whether any "work" was performed during this six-month period or whether the permits expired automatically on their own, according to the statutory limitation.

While the trial court was technically incorrect in extending the Building Permits in light of a disputed issue of "work commenced", our previous discussion regarding the appellees possessing a vested right in the Use Permit is equally applicable to the Building Permits. The cases speak interchangeably about vested rights in building and use permits.

Under these facts, the appellees obtained a vested right in the original Building Permits, and extension of them, in view of the extension of the Use Permit, was proper under the circumstances.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

Appellant asserts that the trial court erred in entertaining the appellees' complaint because they failed to exhaust their administrative remedies. The general rule is that a party seeking relief from zoning actions must first pursue and exhaust the administrative remedies available before instituting a proceeding for judicial relief, unless, however, the administrative remedy is inadequate or non-existent. The rule is based upon the common necessity for orderly procedure, and it has been said not to be an absolute rule of law but one of policy, convenience and discretion, particularly since the prerogative powers of the

court are protected from change by zoning as well as by other legislation. 8A McQuillin, *The Law of Municipal Corporations,* § 25.283 (3d ed. 1965).

Arizona recognizes this long-settled rule of exhaustion of administrative remedies, *Campbell v. Chatwin,* 102 Ariz. 251, 428 P.2d 108 (1967), the reasoning of which is articulated in *Pima Mining Company v. Industrial Commission,* 11 Ariz.App. 480, 466 P.2d 31 (1970):

> "The principle which requires one to exhaust the administrative remedies before an appeal to a court is to afford the administrative bòdy a full opportunity to re-examine and restudy the matter." 11 Ariz.App. at 482, 466 P.2d at 33.

While this is the rule, the common exceptions are where the administrative review procedure is non-existent or where it would be futile or useless to invoke the apparent available procedures. Davis, *Administrative Law,* § 20.07 at p. 391 (3d ed. 1972); 8A McQuillin, *The Law of Municipal Corporations,* §§ 25.283, 25.283A (3d ed. 1965). See also: *Manning v. Reilly,* 2 Ariz.App. 310, 408 P.2d 414 (1965); *Van Laten v. City of Chicago,* 28 Ill.2d 157, 190 N.E.2d 717 (1963); *Napierkowski v. Township of Gloucester,* 29 N.J. 481, 150 A. 2d 481 (1959).

■ The facts here indicate that there is no established administrative review procedure for final town council actions. Thus, special action injunctive relief and application for a declaratory judgment are authorized judicial review procedures regarding zoning matters. Rule 57, Rules of Civil Procedure, 16 A.R.S.; Rules of Procedure for Special Actions, 17A A.R.S.; 8A McQuillin, *The Law of Municipal Corporations,* § 25.307 (3d ed. 1965).

■ Moreover, exhaustion of remedies does not refer to re-application to the same council or board for an alternative form of relief, i.e., application for a variance, from an already promulgated adverse and final decision. This is especially true when such suggested action by the appellant would be futile or useless, as demonstrated by the fact that additional acreage is unavailable to meet the new 20-acre minimum. *Manning v. Reilly,* supra.

The absence of administrative review procedures and the ultimate futility of any such course of action allowed immediate application for judicial relief by the appellees. Davis, *Administrative Law,* supra; *Manning v. Reilly,* supra; *Van Laten v. City of Chicago,* supra; *Napierkowski v. Township of Gloucester,* supra.

## INJUNCTIVE RELIEF AGAINST MUNICIPALITY

The appellant contends that A.R.S. § 12–1802 precludes the entry of injunctive relief against a municipality. A.R.S. § 12–1802 states:

> "An injunction shall not be granted:
>
> 7. To prevent a legislative act by a municipal corporation."

The Supreme Court in *Hislop v. Rodgers,* 54 Ariz. 101, 92 P.2d 527 (1937), held that the obvious purpose of the statute:

> ". . . was to prevent interference by the judicial branch of government with the enforcement of laws by the executive branch through the use of the power of injunction." 54 Ariz. at 113, 92 P.2d at 532. [See also *State ex rel. Berger v. Myers,* 108 Ariz. 248, 495 P.2d 844 (1972).]

■ The design of A.R.S. § 12–1802(7) is to prevent judicial interference and the substitution of judgment during the decision-making process of a municipality. Nevertheless, it is not a bar to judicial review after the enactment of resolutions and the entry of final actions by a municipal council. *Citizens for Orderly Dev. & Envir. v. City of Phoenix,* 112 Ariz. 258, 540 P.2d 1239 (1975); *City of Phoenix v. Fehlner,* 90 Ariz. 13, 363 P.2d 607 (1961); *Iman v. Bolin,* 98 Ariz. 358, 404 P.2d 705 (1965); 8A McQuillin, *The Law of Municipal Corporations,* § 25.302 (3d ed. 1965).

Thus, if the actions of a municipality are arbitrary, capricious and in error with prevailing law, mandamus and/or special action injunctive relief will lie, 3 Yokley, *Zoning Law and Practice*, § 23–3 (3d ed. 1965). A.R.S. § 12–1802 did not preclude the granting of injunctive relief by the trial court in this matter.

## AWARD OF COSTS TO APPELLEES

As admitted by the appellees in their brief, they failed to file a statement of their costs within ten days after rendition of the summary judgment, as required by A.R.S. § 12–346. They thus were precluded from recovering their costs as awarded by the trial court. *Burns v. Wheeler*, 103 Ariz. 525, 446 P.2d 925 (1968).

We therefore reverse the portion of the judgment awarding the appellees their costs. The remaining portions of the trial court's judgment are affirmed.

DONOFRIO, P. J., and OGG, J., concurring.