TOWN OF WATERTOWN ET AL. *v.* EUGENE H. LAMPHIER ET AL.

SUPERIOR COURT     LITCHFIELD COUNTY     FILE NO. 14008

Memorandum filed March 3, 1954.

*Upson & Secor* and *Carmody & Torrance,* both of Waterbury, for the Plaintiffs.

*Pouzzner & Hadden,* of New Haven, for the Defendants.

HOUSE, J. In this action the town of Watertown, the members of the Watertown planning and zoning commission, and two citizens of the town seek an injunction to restrain the defendants from constructing a drive-in theater on premises owned by the defendant Lamphier in said town, and an order directing the defendants to remove a sign erected on the premises stating "Site of Watertown Drive-In Theater."

It appears that in August, 1949, the town created a planning commission which, pursuant to the authority of chapter 45 of the 1949 Revision of the General Statutes, after public hearing, adopted "Plan of Development, Part 2," restricting the area of the town in which the subject premises are located to use for "agriculture, raising of livestock, forestry, residences, recreation, and such buildings for such public or semi-public use as schools, libraries and churches." Under the provisions of § 856 this plan became "effective" on August 15, 1949. In the light of subsequent events, it is unnecessary at this time to determine the exact effect of this action.

In 1953 the defendants proposed to erect a drive-in theater on Litchfield Road and obtained from the town clerk a "building permit" for the construction of such a theater. It should be noted that such permits were required by a local ordinance adopted in March, 1949. The purpose of requiring such a permit is stated in the ordinance to be "to provide the Assessors with necessary information regarding the construction of new buildings and alterations and improvements made in and to existing buildings," and the permit was issued as provided by the ordinance by the town clerk rather than by a building inspector or planning or zoning official. A permit to construct a sewage disposal system was also ob-

tained from the health officer on July 3, 1953. It is significant that the building permit did not purport to be absolute but contained the express provision, "This permit is void unless all other permits required by state or local ordinances have been obtained."

With the issuance of the building and sewage disposal permits, it is obvious that a race began between the plaintiffs, who desired to prevent the construction of the proposed drive-in theater, and the defendants, who desired its construction.

Before the defendants could build and operate a drive-in theater it was necessary for them to meet certain specific statutory requirements. Section 3700 of the General Statutes requires approval by the commissioner of state police of any building in which it is proposed to operate a moving picture machine. Although the application for the certificate of approval for the defendants' proposed building was seasonably filed, the approval was not granted until January 4, 1954.

Section 1079c of the 1953 Cumulative Supplement (§ 532b of the 1951 Cumulative Supplement) expressly provides: "No person shall build, establish or operate any open air theater having an exit or entrance on, or abutting or adjoining, any trunk line or state aid highway within this state unless the person building, establishing or operating such open air theater shall have procured from the state traffic commission a certificate that the operation of such open air theater will not imperil the safety of the public." At the trial of this case information was not available as to the status of the defendants' application to the state traffic commission. By agreement the status of the application was to be certified to the court and subsequently a stipulation was filed, dated February 11, 1954, "that the Con-

necticut State Traffic Commission has not yet rendered a decision in connection with the matter of the location of a proposed drive-in theater on Route 63 in Watertown." This is a matter of great importance in these proceedings since by the express provision of § 1079c, no open air theater such as that contemplated by the defendants could lawfully be built unless the required certificate from the state traffic commission had been issued.

In the meantime the defendants had surveyed the subject premises in July 1953, dug and refilled test holes, and performed work of an engineering nature which appears to have been necessitated by the requirements of the state police commissioner, the local health officer and the state traffic commission prior to their consideration of the applications for approval and which would also be preliminary steps in the layout of the defendants' proposed enterprise. It does not appear, however, that the defendants started to build their proposed building, and, indeed, any such building would have been unlawful in the absence of the certificate from the state traffic commission.

Meanwhile the planning commission of the town, after public hearing on August 11, 1953, adopted an ordinance pursuant to the authority of § 849 of the General Statutes, which ordinance became effective on August 26, 1953, and which expressly prohibited the erection of any commercial or business structure or advertising sign in the subject area except upon special license granted under the provisions of Section 850. The area is primarily a farming and residential area, not thickly populated, and is contiguous to farming regions in the adjoining towns. It is not claimed that any license has been issued granting an exception to the defendants. The planning commission was also designated as the planning and zoning commission for the town.

From these facts it must be concluded that the plaintiffs have won the race. The adoption of the "Plan of Development, Part 2" by the planning commission showed an intent to bar this type of commercial enterprise from the subject area, but the intention was not clearly implemented until the adoption of the specific regulation effective August 26, 1953. The defendants showed an intent to construct a drive-in theater but before this intention could be implemented and, indeed, before the requisite state traffic commission permit could be obtained to make the construction of such a building lawful, the ordinance had been adopted prohibiting such construction and enterprise in this area. "The rule is well established that the possession of a permit to build, commencement of work (especially when the building is not substantially in course of construction) or the fact that contracts entered into with third persons may be affected, does not constitute a vested right the invasion or deprivation of which by an enactment of general application, and in a valid exercise of the police power, invalidates the latter on constitutional grounds." *Fitzgerald* v. *Merard Holding Co.,* 110 Conn. 130, 141.

The plaintiffs seek an injunction against the construction of the proposed drive-in theater and an order requiring the removal of the sign advertising the site of the proposed theater. They are clearly entitled to the relief sought. An injunction may issue restraining the defendants from any use of the subject premises contrary to the provisions of the August 26, 1953 ordinance of the town of Watertown, and an order may issue requiring the removal of the sign advertising the site of the proposed theater.